Kenneth SOUDER, Appellant,

v.

Michael McGUIRE, Superintendent,
Farview State Hospital, Waymart,
Pennsylvania, Appellee.

No. 74–1888.

United States Court of Appeals,
Third Circuit.

Argued Feb. 28, 1975.

Decided May 13, 1975.

Beverly A. Nelson, Allen C. Warshaw, Deputy Attys. Gen., Lawrence Silver, Deputy Atty. Gen., Chief, Civ. Litigation, Robert P. Kane, Atty. Gen., Dept. of Justice, Harrisburg, Pa., for appellee.

Michael Basista, Scranton, Pa., for appellant.

David Ferleger, Mental Patient Civil Liberties Project, Philadelphia, Pa., for amicus curiae.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

In this case, a state prisoner who had been committed to a Pennsylvania mental hospital filed a petition for a writ of

habeas corpus in the district court seeking to challenge his confinement and the commitment provisions of § 411 of the Pennsylvania Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4411. The district court refused to permit petitioner to proceed in forma pauperis. Unfortunately, because of the posture in which this case has arrived before us, the only issue we may consider is the proper construction of 28 U.S.C. § 1915(a).[1]

The case first came before this court on August 22, 1974 on petitioner's motion for leave to proceed in forma pauperis. Since the affidavit established to the satisfaction of the panel that petitioner was unable to pay costs or to give security therefor, such leave was granted so as to enable him to prosecute his appeal. At the same time, recognizing the serious and complex issues raised by the petition for a writ of habeas corpus, this court appointed counsel. 18 U.S.C. § 3006A(g). Thereafter, the Mental Patient's Civil Liberties Project of Philadelphia was granted leave to file a brief as amicus curiae. Later, when the case was assigned to this panel for consideration on its merits, we reviewed the record and discovered that the district court had never acted upon the merits of the petition. Instead, the district court had merely entered an order denying petitioner's motion for leave to proceed in the district court in forma pauperis. We reverse and remand for further proceedings.

In denying the motion the district court referred to Ward v. Werner, 61 F.R.D. 639 (M.D.Pa.1974), in which the same judge granted leave to proceed in forma pauperis to a prisoner who had $7.00 in his prison account but denied in forma pauperis to two prisoners who had assets of $65.00 and $50.00 respectively. In the instant case the record establishes that petitioner had $50.07 in his account at Farview State Hospital at the time he sought to file his petition, and that every two weeks his aged mother sent him an additional $15.00.

■ Without commenting on the appropriateness of the rulings in Ward v. Werner, *supra*, we hold that in this case (1) the court erred in refusing to allow petitioner leave, pursuant to 28 U.S.C. § 1915(a), to proceed without prepayment of fees and costs or security therefor, and, (2) the court should have appointed an attorney to represent petitioner pursuant to 18 U.S.C. § 3006A(g).

Since there is no district court record, the description of the case which follows is set forth in reliance on representations in the several briefs filed in this court. Petitioner was sentenced to a term of life imprisonment in 1962 upon a plea of guilty to a felony-murder. He was imprisoned initially at Graterford, and in 1965, was transferred to the State Correctional Institution at Pittsburgh. In 1967 he was transferred to Farview State Hospital upon his own request for commitment. In 1971 he was returned to the State Correctional Institution at Pittsburgh where he was confined until May 10, 1972.

Following the filing of a petition for commitment by the prison's deputy superintendent, a hearing was held on April 27, 1972 in the Luzerne County Court of Common Pleas. Commonwealth v. Souder, No. 1813, March Term, 1972, Court of Common Pleas, Luzerne County, Pennsylvania. Petitioner was given no notice of this hearing, nor was he present. A notice was sent to his mother, and a public defender was provided by the Commonwealth to represent him. The state presented the testimony of a psychiatrist who treated Souder at the State Correctional Institute, the same doctor's psychiatric evaluation pre-

---

1. 28 U.S.C. § 1915(a) provides in part:

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress."

pared on February 21, 1972, and a second evaluation prepared by another psychiatrist on March 13, 1972. Both physicians diagnosed petitioner as schizophrenic and a chronic paranoid. The court then ordered his commitment to Farview. Thereafter, Souder unsuccessfully sought habeas corpus relief in the Pennsylvania courts, and on April 10, 1974 filed a petition in the district court below.

Souder's *pro se* petition, though inartfully drafted as one might expect, raises serious equal protection and due process issues as to the constitutionality of § 411 of Pennsylvania's Mental Health and Mental Retardation Act of 1966.[2] That section governs commitment to mental health facilities of persons undergoing sentence and detained in a correctional institution. It provides that on the petition of the warden the sentencing court *may* adopt one of the commitment procedures set forth in § 408(b) of the Act.[3] With no record before us, we cannot determine precisely which of the procedures listed in § 408(b) were followed. It would appear that those which were followed were less than, or at least different from the mandatory procedures which must be followed for the involuntary civil commitment of a non-confined adult in Pennsylvania. *See* Dixon v. Attorney General, 325 F.Supp. 966 (M.D.Pa. 1971) (consent decree) (three-judge court).

The constitutional adequacy of the procedures, whatever they were, must be tested against an emerging body of law which has begun to place safeguards around the transfer of prisoners to mental hospitals. *See* South Carolina Department of Corrections, The Emerging Rights of the Confined 190–91 (1972). Without attempting a complete

---

**2.** Section 411 of the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4411 provides:

"Commitment of person undergoing sentence and detained in a penal or correctional institution

(a) Whenever a person undergoing sentence and detained in a penal or correctional institution, is believed to be mentally disabled so that his commitment to a facility is necessary, a petition for such commitment may be presented to the court which imposed sentence. The petition may be made by the warden or other officer in charge of the detaining institution or counsel for the person so sentenced.

(b) To assist in determining the questions raised by the petition, the court may adopt one or any combination of the procedures set forth in section 408(b).

(c) After consideration of the petition, and all the evidence presented, the court may order the commitment of such person to a designated facility if satisfied that the person is mentally disabled and that his commitment is necessary.

(1) The time during which he is committed to a facility shall be computed as part of the term for which he was sentenced.

(2) If it is determined that a prisoner who has been committed to a facility in accordance with the provisions of this section, will need further care after the expiration of his maximum sentence or sentences, the director shall initiate appropriate proceedings *under this act as if no crime had been involved.*

(3) If, before the expiration of his sentence, sufficient improvement in condition results so that care in such facility is no longer necessary, the director of the facility in which he is detained shall certify such fact to the committing court and he shall be returned on order of such court to the penal or correctional institution from which he was removed."

**3.** Section 408(b) of the Act, 50 P.S. § 4408(b) provides:

"(b) To assist in determining the questions raised by the petition the court may adopt one or any combination of the following procedures:

(1) Appoint two or more physicians to examine the person in the detaining institution and make a report as to whether he is mentally disabled and whether his commitment is necessary.

(2) Appoint a commission consisting of two physicians and an attorney which shall examine such person in the detaining institution and in addition, receive any other evidence from any source bearing upon the questions of whether the person is mentally disabled and whether his commitment is necessary.

(3) Appoint an attorney to represent such person with reference to the petition.

(4) Hold a hearing which may be public or private. Appropriate notice thereof shall be given to all interested parties including the attorney for the Commonwealth. The presence of the person whose commitment is sought, may be compelled."

survey of the complex issues which are manifest in this case, we refer to the leading decision of Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). There the Court held that a New York statute which permitted civil commitment upon expiration of a prison sentence without the right to a trial *de novo* review by a jury on the question of sanity was a denial of equal protection, since the state's statutory scheme prescribed such a procedure for the civil commitment of others. The Court left open the question whether prisoners had during confinement, the same equal protection right. Since *Baxstrom*, several other well-reasoned federal court decisions have applied its holding in the context of prisoner transfers to mental institutions during the period of their original terms of sentence. *See* United States ex rel. Schuster v. Herold, 410 F.2d 1071 (2d Cir.), cert. denied, 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969); Matthews v. Hardy, 137 U.S.App.D.C. 39, 420 F.2d 607 (1969), cert. denied, 397 U.S. 1010, 90 S.Ct. 1231, 25 L.Ed.2d 423 (1970); Chesney v. Adams, 377 F.Supp. 887 (D.Conn. 1974).

In addition to the weighty equal protection problems, the petition presents equally serious due process issues, some of which, in the context of the involuntary civil commitment of non-confined adults, have been explored in Dixon v. Attorney General, *supra*; *cf.* Ferenc v. McGuire, 353 F.Supp. 951 (E.D.Pa.1972); Commonwealth ex rel. DiEmilio v. Shovlin, 449 Pa. 177, 295 A.2d 320 (1972).

The due process issues concerning involuntary civil commitment have been presented to the Supreme Court without a decision on the merits as yet, in Lessard v. Schmidt, 349 F.Supp. 1078 (E.D. Wis.1972), vacated and remanded on other grounds, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), on remand, 379 F.Supp. 1376 (E.D.Wis.1974), vacated and remanded on other grounds, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975). *See also* Developments in the Law—Civil Commitment of the Mentally Ill, 87 Harv.L.Rev. 1190, 1265–1316 (1974).

■ There is no question about the appropriateness of habeas corpus as a method of challenging involuntary commitment to a mental institution. United States ex rel. Gerchman v. Maroney, 355 F.2d 302 (3d Cir. 1966).

■ What we have said concerning the complexity of the legal issues involved here amply demonstrates that this habeas corpus petition is not one of the kind which can be litigated on the existence of a fund in the sum of $50.07 which is supplemented by an additional $7.50 per week stipend. The purpose of § 1915 is to provide an entré, not a barrier, to the indigent seeking relief in the federal court. The Supreme Court has recognized that one need not "contribute to payment of costs, the last dollar they have or can get. . . ." in order to enjoy the benefits of § 1915. Adkins v. E. I. DuPont de Nemours & Co., 335 U.S. 331, 339, 69 S.Ct. 85, 93 L.Ed. 43 (1948).[4]

4. Justice Black wrote:

"We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs . . .' and still be able to provide' himself and dependents 'with the necessities of life.' To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one. . . ." 335 U.S. at 339–40, 69 S.Ct. at 89.

Petitioner here is, of course, already a public charge. To that extent the letter, but certainly not the spirit of *Adkins* may be distinguishable.

In like manner, we do not think that prisoners must totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison or a mental hospital beyond the food, clothing, and lodging already furnished by the state. An account of $50.07 would not purchase many such amenities; perhaps cigarettes and some occasional reading material. These need not be surrendered in order for a prisoner or a mental patient to litigate in forma pauperis in the district court.

The order denying leave to proceed in forma pauperis will be reversed and the case remanded with directions to grant leave to proceed without prepayment of fees and costs or security therefor, and to appoint counsel pursuant to § 3006A(g).