Benjamin GARDNER, Plaintiff,

v.

R. R. KING, D. D. Wells, B. C. Hamlin, H. T. Adams, and J. C. Goodman, Chief of Charlotte Police, Defendants.

No. C–C–78–156.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Jan. 26, 1979.

None appearing for plaintiff.

Frank B. Aycock, III, Charlotte, N. C., for defendants.

## ORDER

McMILLAN, District Judge.

On April 14, 15, 16 and 17, 1975, Benjamin Gardner was tried in Mecklenburg County Superior Court on a charge of first degree murder. On April 17, 1975, he was sentenced to a prison term of fifteen to twenty years based on a conviction of second degree murder.

On April 14, 1978, this court received from plaintiff Gardner papers by which he sought to file an action under 42 U.S.C. § 1983 against several members of the Charlotte Police Department who allegedly played some role in his arrest, trial, and conviction. Included in those papers was an affidavit in support of a motion to be allowed to proceed with the action *in forma pauperis.*

On April 24, 1978, the court denied plaintiff's request that he be allowed to proceed *in forma pauperis,* based on plaintiff's affidavit which showed that he had $110.77 in his prison trust account at the time he executed the affidavit. The court also ordered that plaintiff's papers be returned to him so that he might "amend to allege with greater particularity" the allegations summarily stated in his original submission.

On May 26, 1978, plaintiff filed an amended complaint, along with the required filing fee. The complaint had been notarized on May 5, 1978.

On June 8, 1978, the court allowed plaintiff Gardner to proceed *in forma pauperis* in an unrelated action brought by plaintiff, *Gardner v. James Lee Organization,* C–C–78–190.

On July 10, 1978, the court took notice of its ruling in the *James Lee* suit and allowed plaintiff to proceed *in forma pauperis* in the action at bar.

Defendants have raised in their joint answer and supplementary motion for summary judgment the defense of the statute of limitations. They assert that since the allegedly wrongful conduct (alleged fabrication of evidence, perjury at trial, and conspiracy) occurred during the trial in mid-April, 1975, the limitations period on the claim ran only until mid-April, 1978, thereby barring an action on that claim based on a complaint that was not *filed* until May 26, 1978.

In North Carolina, the three-year limitations period provided by N.C.G.S. § 1–52(2) is applicable to actions brought under 42 U.S.C. § 1983. *See, e. g., Feilder*

*v. Moore,* 423 F.Supp. 62 (W.D.N.C.1976); *see generally* 42 U.S.C. § 1988. Plaintiff alleges that defendants violated his rights through perjurious testimony and the introduction of fabricated evidence at trial. Although plaintiff states that some of the evidence was fabricated prior to trial, plaintiff was not injured by the allegedly false evidence prior to trial. Reading his submissions on the issue with appropriate liberality, they state in essence that the claims arose during the course of his trial, specifically on April 14 and 15, 1975, and they accrued at that time. *See Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975).

The issue before the court is an unusual one: whether the *receipt* within the statutory period of a complaint under 42 U.S.C. § 1983 by an individual seeking *in forma pauperis* status suffices to toll the running of the statute of limitations, notwithstanding that *in forma pauperis* status is denied upon review of the pauper affidavit and the complaint is therefore not *filed* until after the limitations period has expired.

■ Defendants properly point out that under the Federal Rules of Civil Procedure rule 3 an action "is commenced by *filing* a complaint with the court" (emphasis added). This rule is designed to govern the ordinary course of litigation in the federal courts. It is, however, not to be applied with procrustean finality to § 1983 suits by prisoners, when to do so would fail to serve the ends of substantial justice. Federal Rules of Civil Procedure rule 1 expressly provides that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." When extraordinary circumstances justify judicial flexibility in application of the rules of procedure, it is incumbent on the federal courts to respond appropriately. The few federal courts that have been confronted in recent years with issues similar to the one at bar have so responded.

In *Mathis v. United States,* 391 F.2d 938, 183 Ct.Cl. 145, *vacated on rehearing on other grounds,* 394 F.2d 519, 183 Ct.Cl. 145 (1968), the Court of Claims was confronted with the question whether rule 3 should be applied literally to a *pro se* state prison inmate seeking to be compensated for an allegedly illegal discharge from the military. The court resolved the issue as follows:

"There is some uncertainty as to when the suit in this court must be deemed to have been initiated. The present petition was formally filed on July 10, 1967, but previously plaintiff had sent to the court, late in October 1966, a handwritten petition which was not filed, apparently because copies were not attached. Since plaintiff was at the time incarcerated in a state prison and was acting *pro se, we treat this earlier petition as the commencement of the action even though the paper did not comply literally with our rules.*"

391 F.2d at 939–40, *citing Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964) (emphasis added). *See also* 394 F.2d 519, 521 n.2 (principle affirmed on rehearing).

The United States Court of Appeals for the Fourth Circuit appears to have adopted a similar approach in the civil rights context, in *Vinson v. Richmond Police Department,* 567 F.2d 263 (4th Cir. 1977). In discussing defendants' claim that plaintiff Vinson's *pro se,* civil rights action was barred by the applicable Virginia statute of limitations, the court stated:

"Irrespective of whether the federal or state rule controls, unquestionably then the filing of his complaint on Monday, June 21, 1976, would have been in time. Plaintiff's complaint was received in the Clerk's office on June 21, which would normally have been within time. The plaintiff, however, sought to proceed *pro forma pauperis* under § 1915, 28 U.S.C., and it was argued that, in such circumstances, the action was not to be considered filed until the court had entered its order permitting the action to proceed *pro forma pauperis.* The district judge did not enter his order allowing the action to proceed *pro forma pauperis* until August 17, 1976 and, because this was beyond two years from the commission of

the 'constitutional test,' the action was found to be barred. We are not prepared to accept this construction of the application of § 1915. Under a more reasonable construction the approval of the application to proceed *pro forma pauperis,* when entered, would relate back to the date when the plaintiff filed his action with the clerk, accompanied by an appropriate application to proceed *pro forma pauperis.*"

567 F.2d at 264 n.2; *accord, Rosenberg v. Martin,* 478 F.2d 520 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Allah v. Commissioner,* 448 F.Supp. 1123 (N.D.N.Y.1978).

The only relevant distinction between this case and *Vinson, supra,* is that plaintiff Vinson was granted *in forma pauperis* status upon first application. Here, plaintiff Gardner was required to submit a filing fee before the court then permitted him to proceed in that same capacity. Plaintiff Gardner's original complaint also was returned to him so that it might be refiled with greater specificity. That fact, however, should have no independent significance; to hold otherwise would run contrary to the mandate of *Gordon v. Leeke,* 574 F.2d 1147 (4th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), that *pro se* civil rights plaintiffs not be penalized for initially vague or conclusory allegations.

There appears to be no question that plaintiff Gardner brought his allegations, in generalized but written form, to the attention of the court by April 14, 1978. In that original filing, he stated the names of those he sought to hold liable, the theories under which he claimed to be entitled to relief (alleged fabrication of evidence, perjury at trial, and conspiracy), and the relief sought ($2,000,000). After the court denied leave to proceed *in forma pauperis,* plaintiff promptly responded with an appropriate filing fee and substantial additions to his factual allegations. Since service of the complaint upon defendants, plaintiff has zealously participated in the prosecution of this action. While there was some delay in service during the interim between the filing of the complaint with filing fee and the July order allowing service of process at government expense, this delay may have been due to the same financial reverse suffered by plaintiff which led the court ultimately to grant *in forma pauperis* status, and therefore cannot, on this record, fairly be characterized as a delay chargeable to plaintiff. There is no indication that plaintiff's initial submission to the court was interposed as a last ditch effort to prevent the running of the limitations period; rather, it appears to have been a good faith effort to prosecute his claims of unconstitutional mistreatment instituted with the reasonable expectation that he would be permitted to proceed *in forma pauperis.*

Litigants such as plaintiff Gardner have received, appropriately, solicitous treatment in this circuit. *See, e. g., Gordon v. Leeke, supra.* This special consideration stems both from their status as prisoners and *pro se* applicants to the court and from the fact that their suits are brought to vindicate important federal principles under statutes that are unequivocally remedial in nature.

■ The granting or denial of *in forma pauperis* status to a *pro se* applicant is, under 28 U.S.C. § 1915, a matter resting within the sound discretion of the trial court. As with any rule of law which invests the trial court with discretion in its administration, the statute is not likely to be applied with absolute consistency among all tribunals. *Compare, e. g., Souder v. McGuire,* 516 F.2d 820 (3d Cir. 1975) (institutional account of $50.07 plus semi-weekly income of $15 insufficient to preclude *in forma pauperis* status), *with Shimabuku v. Britton,* 357 F.Supp. 825 (D.Kan.1973), *aff'd. on other grounds,* 503 F.2d 38 (10th Cir. 1974) (institutional account of $45, $51.27, and $61.41 each held sufficient to preclude *in forma pauperis* status). The generalized statement of policy embodied in § 1915, together with its varying application, is bound to create reasonable, albeit erroneous expectations among those who assert rights to proceed, with or without counsel, under the statute. Furthermore, those who reasonably perceive themselves

as the intended beneficiaries under the statute are most susceptible to such error; they are often unrepresented by counsel because they lack adequate funds to retain private counsel and the grant of *in forma pauperis* status is a statutory predicate to appointed counsel. The manifest purpose of § 1915 is to provide access to the federal forum to those unable to bear the expense of prosecution. *See, e. g., Clark v. Zimmerman,* 394 F.Supp. 1166 (M.D.Pa.1975). While the line between those who qualify under the statute and those who do not, as the federal courts have drawn it, is unclear, it is eminently clear that many, like plaintiff, who fail to satisfy the poverty requirements at the time of initial filing, are in fact operating under virtually identical disabilities with those who do meet the requirement, and are substantially impoverished, if not so destitute as to qualify for *in forma pauperis* status. To hold that a plaintiff with $50 to his name is entitled to protection from the continued running of the statute of limitations because his complaint was received by the clerk prior to expiration of the limitations period, but that one with $110 is not so entitled because *in forma pauperis* status is denied, even though the latter plaintiff then submits a filing fee within a reasonable time, is to create a fictional division between those who are deemed to be not dilatory because they are poor and those who are deemed to be dilatory because they are not quite poor enough. Such a rule would not be in keeping with the remedial purposes of § 1915 or § 1983 and would create an artificial division that is particularly obnoxious in its exclusionary effect because it deprives access to the courts based on classifications of "wealth" among the very poorest plaintiffs in the federal forum.

Based on the foregoing, the court holds that receipt from a *pro se* state prisoner of a complaint under 42 U.S.C. § 1983 and affidavit in support of *in forma pauperis* status is sufficient to "commence" the action, notwithstanding the denial of *in forma pauperis* status, where the initial filing is in good faith, not interposed for dilatory purposes, based on the reasonable expectation that *in forma pauperis* status would be granted, and followed by reasonably prompt action to continue the prosecution of the action after *in forma pauperis* status is denied.

The record suggests that plaintiff meets these criteria. There are genuine issues of material fact, and defendants, at this stage of the proceedings, are not entitled to judgment on the statute of limitations issue as a matter of law.

IT IS THEREFORE ORDERED:

1. Defendants' motion for summary judgment shall be and it hereby is denied.

2. Defendants shall, within thirty (30) days of the filing date of this order, respond to plaintiff's request for the production of documents.