650 F.2d 521
 George Reynolds EVANS, Sr., Appellant,
v.
Carlton CROOM, Dallas Mercer, Sgt. Peppin, Appellees.
Victor FOUST, Appellant,
v.
N. C. DEPARTMENT OF CORRECTION, Hospital at Central Prison,
Mr. Leigh F. Wheeler, Supt. of Md., Appellees.
Kenneth M. WEBB, Appellant,
v.
Lt. W. E. POPE, Sgt. C. J. MacLeod, Officer S. Ray, Officer
C. Bagley, Lt. Norwood, Appellees.
Bennie Lee LINDER, Appellant,
v.
S. A. BERRY, R. G. West, R. E. Green, J. M. Temple, R. T.
Brooks, D. Harris, D. Johnson, Appellees.
Robert Lee THACKER, Appellant,
v.
Samuel P. GARRISON and Chris Morgan, Appellees.
 Nos. 80-6331, 80-6352, 80-6355, 80-6393 and 80-6395.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 3, 1980.
Decided June 4, 1981.
 
 C. Frank Goldsmith, Jr., Marion, N. C., for appellants.
 Jacob L. Safron, Sp. Deputy Atty. Gen. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N. C., on brief), for appellees.
 Before HAYNSWORTH, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.
 RUSSELL, Circuit Judge:
 
 
 1
 The plaintiffs, all state prisoners, appeal the dismissal of their pro se § 1983, 42 U.S.C. actions against the officials at the prison where they are incarcerated. In all the actions, the plaintiffs, by affidavit sought under § 1915(a), 28 U.S.C., authority to commence and prosecute their actions as indigents, relieved of any obligation to pay filing fees.
 
 
 2
 Before the actions were filed, the District Court had promulgated an order permitting a tentative filing of any § 1983 action by a state prisoner whenever the affidavit in support of the pro forma pauperis motion declares "that the prisoner has less than the statutory filing fee in his trust fund account," but directing the Clerk of Court, after procuring from the North Carolina Department of Corrections "a certified copy of the trust fund account of the plaintiff for the six-month period preceding submission of the complaint," to require the "payment of a partial filing fee based on the income received within the six-month period preceding submission of the complaint ," but never exceeding 15% of the sums received in the plaintiff's trust account for the preceding six months.
 
 
 3
 Obedient to the order of the District Court, the Clerk, after submission of the complaints and after obtaining from the prisoners affidavits showing the amount in their prison trust accounts, requested from the North Carolina Department of Corrections a statement showing the status of their prison "trust fund accounts" both at the time of filing and over a period of six months prior to the filing. On the basis of this latter statement, the Clerk demanded that the plaintiffs pay within 30 days certain sums as provided in the rule in partial payment of the filing fees as a condition to the maintenance of their actions.[1] The plaintiffs failed within the required time to make the payments fixed by the Clerk and the District Court dismissed the actions. This appeal followed.
 
 
 4
 The rule promulgated by the District Court and under which it acted in these cases represents an attempt to deal with the flood of pro se § 1983 prisoner actions that today clog the federal court calendars by weeding out those where it appears the plaintiff himself has some financial resources but has such lack of good faith in his action that he is unwilling to make any contribution, however small, towards meeting its filing costs. The type of actions at which the rule is directed, though generally stated in passable pro forma allegations, considering the liberality in pleading allowed pro se complaints, has proved all too often to be without merit and frequently appears to have been begun without any real hope of success as "mere outlets for general discontent in having to undergo penal restraint or of personal satisfaction in attempting to harass prison officials"[2] or to enjoy what one describes as a prisoner's "field day in the courts, at public expense," Weller v. Dickson, 314 F.2d 598, 601 (9th Cir. 1963), cert. denied 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72. If the prisoners, by filing an indigent affidavit in such actions, may acquire at will indigent status, they will have every incentive to indulge any inclination they may have to harass their custodian. After all, they have nothing to lose and everything to gain.[3] Because of this, we, as well as other circuit courts, have cautioned the district courts to "be diligent in acting to prevent state prisoners from calling upon the financial support of the federal government to prosecute frivolous civil suits intended to harass state prison officials." Daye v. Bounds, 509 F.2d 66, 68 (4th Cir. 1975), cert. denied, 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671.[4] The rule under review is the district court's answer to our direction and that of the Court in O'Connell. The procedure adopted is neither new nor unique, and it is a procedure which in one form or another has been reviewed by other circuit courts.
 
 
 5
 In reviewing rules such as the one challenged here the courts have not differed on the recognition of the problem presented to the federal courts by the crescendo of prisoners' civil rights suits or the propriety of attempting to moderate that development. They have recognized the unique status of a prisoner seeking indigent status. A prisoner is assured of the necessities of life, housing, food, clothing and medical care at state expense. His financial needs are thus not similar to those of a person in ordinary life. This, of course, does not mean that the prisoner is to be denied all financial resources with which to buy the simple amenities of life, severely limited though they may be by the constraints of his prison environment, as a condition to qualifying as an indigent under § 1915(a). No more than for any one else, indigency under § 1915(a) for a prisoner is not synonymous with absolute pennilessness.[5] But there is nothing unreasonable in requiring him, as well as any other plaintiff, to make some contribution, however minimal, to ask him, in the words of Stump, "to some small degree to 'put his money where his mouth is,' it being all too easy (for him) to file suits, even with sufficient pro forma allegations, if it costs nothing whatever to do so."[6] Such a requirement imposed "to curb the indiscriminate filing of (meritless) prisoner civil rights actions" is simply forcing the prisoner "to 'confront the initial dilemma which faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it?' " Braden v. Estelle, 428 F.Supp. 595, 596 (S.D.Tex.1977).
 
 
 6
 Such differences as have arisen among the courts on this issue lie in determining when the prisoner's resources are such that, before permitting him to qualify for indigent status, he should be compelled to make some partial contribution out of such resources towards a filing fee which in amount will not unreasonably interfere with his right to purchase basic amenities in the prison context. In arriving at this determination, the courts recognize that in all prisons the prisoners have a trust fund account, accumulated either from prison earnings or from private resources, which can be drawn on to meet the costs of purchasing things and services that may be available in the prison context. Though not confining themselves to these trust accounts, courts, in ascertaining indigent status, normally look to these balances in evaluating the prisoner's qualification for indigent classification just as the district court has done in the challenged rule.[7]
 
 
 7
 The courts have developed different standards of indigency arrived at on the basis of those trust funds. The early cases sought to qualify a prisoner's financial situation for determining indigent status by establishing the availability of more than $50 in the prisoner's trust account as sufficient to deny indigent status, at least so far as payment of the filing fee was concerned.[8] Other courts have questioned an inflexible dollar standard for ascertaining indigent status. The leading case among those finding such an inflexible standard improper is Souder v. McGuire, supra, 516 F.2d 820. In that case the prisoner had $50.07 in his trust account, which was supplemented by an additional $7.50 per week stipend. In reversing a denial of indigent status, the court said (Id. at 824):
 
 
 8
 " we do not think that prisoners must totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison or a mental hospital beyond the food, clothing, and lodging already furnished by the state. An account of $50.07 would not purchase many such amenities; perhaps cigarettes and some occasional reading material. These need not be surrendered in order for a prisoner or a mental patient to litigate in forma pauperis in the district court."[9]
 
 
 9
 For other cases to the same effect, see In Re Smith, 600 F.2d 714 (8th Cir. 1979)[10] in which the prisoner's trust account showed a balance of $65.85; cf., Gardner v. King, 464 F.Supp. 666, 670 (N.D.N.C.1979). More recently other courts have adopted a more flexible standard of qualification, under which a prisoner makes some partial payment, never more than a small percentage of his prison trust account balance, toward his filing fee.[11] This was the standard generally adopted by the district court in this case but, as the district court provides, subject to a consideration of "such other factors as plaintiff may draw to the court's attention."
 
 
 10
 We find nothing impermissible in the rule issued by the district court. By providing for a small progressive rate of payment, adjusted to the amount the prisoner has in his trust account, and subject as the rule is to the right of the plaintiff to make a showing of special circumstances justifying a different payment, if any, the rule is free of the objections which attaches to an inflexible standard where, as in Souder, a prisoner, by being just 7 cents over $50 is required to pay the full filing fee, whereas if his account had been just 7 cents less, he would have paid nothing. The percentages used in the district court's rule in fixing the payments, whether in whole or partial, are generally reasonable in amount, subject as the rule is to the plaintiff's right to show any special circumstances excusing the application to him of the standard, and do no more than satisfy the requirement stated in Stump that a litigant "put his money where his mouth is."
 
 
 11
 We do, however, have difficulty with one part of the rule. In determining whether to grant indigent status to a prisoner-plaintiff, the district court may "inquire whether, if a prisoner has no cash credit at the moment of filing, he had disabled himself by a recent drawing on his account, and if so, for what purposes." In re Stump, supra, 449 F.2d at 1298; Carter v. Telectron, Inc., supra, 452 F.Supp. at 942.[12] But in order for withdrawals from that account to be a basis for denial of indigent status, the district court must be able to say either from the nature or timing of the withdrawal, or both, or from other specific circumstances, that the purpose of the withdrawal appears to have been intended to avoid his obligation under the rule to pay in whole or in part filing costs. And, before reaching such conclusion, the prisoner should be given some reasonable opportunity, after appropriate notice, to explain and refute any finding to that effect, just as he has a right, after notice, to bring to the court's attention other factors that may authorize either excusing entirely any payment or reducing same. As we read the rule in this case, this right of the prisoner is not spelt out or fully recognized. Because we are uncertain from the record before us that this procedure was followed in the cases on appeal, remand is necessary in order that the district court may, after notice to and an opportunity for the prisoner to explain in writing the withdrawal or withdrawals, as well as his right to present special circumstances warranting excusing any or a part of the payment provided under the rule, make proper findings.
 
 
 12
 REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 In the case brought by the plaintiff Thacker, the required partial filing fee was $1, based on a percentage of the plaintiff's aggregate prison trust account of $11.20 during the preceding six months; in the case of the plaintiff Evans, the required partial filing fee was $8.70, based on a percentage of the plaintiff's aggregate trust fund account of $116.00 during the preceding six months; in the case of Foust, the required partial filing fee was $24, based on a percentage of the plaintiff's aggregate trust fund account of $161.00 during the preceding six months; in the case of Linder the required partial filing fee was $33.00, based on a percentage of the plaintiff's aggregate trust fund account of $225.00 during the preceding six months; in the case of Webb, the required partial filing fee was $29.00, based on a percentage of the plaintiff's aggregate trust fund account of $119.00 during the preceding six months. The orders were all issued by the Clerk and in each instance the prisoner-plaintiff had apparently claimed no funds in his prison trust account
 
 
 [2]
 Carey v. Settle, 351 F.2d 483, 484 (8th Cir. 1965)
 
 
 [3]
 In the early case of O'Connell v. Mason, 132 F. 245, 247 (1st Cir. 1904), this point was emphasized:
 "It is quite clear that Congress, while intending to extend to poor and meritorious suitors the privilege of having their wrongs redressed without the ordinary burdens of litigation, at the same time intended to safeguard members of the public against an abuse of the privilege by evil-minded persons who might avail themselves of the shield of immunity from costs for the purpose of harassing those with whom they were not in accord, by subjecting them to vexatious and frivolous legal proceedings."
 
 
 [4]
 See also Boyce v. Alizaduh, 595 F.2d 948, 950-51 (4th Cir. 1979); Graham v. Riddle, 554 F.2d 133, 134-35 (4th Cir. 1977)
 
 
 [5]
 See Adkins v. DuPont Co., 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948)
 
 
 [6]
 In re Stump, 449 F.2d 1297, 1298 (1st Cir. 1971)
 See also, Aldisert Report No. 2 at 3 on Prisoner Cases, as quoted in Carter v. Telectron, Inc., 452 F.Supp. 944, 949 (S.D.Tex.1976):
 "The usual restraint on unwarranted litigation, expense, is absent in a field where prisoners can usually proceed in forma pauperis and where the expenditure of time in preparation is a welcome relief from the tedium of prison life."
 
 
 [7]
 In Souder v. McGuire, 516 F.2d 820, 823-24 (3d Cir. 1975), the Court looked to the prisoner's trust fund account; see also, Braden v. Estelle, supra, 428 F.Supp. 600-01
 
 
 [8]
 Ward v. Werner, 61 F.R.D. 639, 640 (M.D.Pa.1974); Shimabuku v. Britton, 357 F.Supp. 825, 826 (D.Kan.1973), aff'd., 503 F.2d 38 (10th Cir. 1974)
 When these cases were decided, however, the filing fee was but $15. Such fee was now being increased to $60. At best, then, under the new conditions, it is assumed that a prisoner, whose trust account was more than $50 would be compelled in the courts adopting this standard to make only a partial payment of the filing fee.
 
 
 [9]
 Unquestionably the result reached in this case was strongly influenced by the Court's view of the strength and complexity of the prisoner's case. Thus, it began its discussion of the indigency decision with this statement which understandably colored its ultimate decision (516 F.2d at 823):
 "What we have said concerning the complexity of the legal issues involved here amply demonstrates that this habeas corpus petition is not one of the kind which can be litigated on the existence of a fund in the sum of $50.07 which is supplemented by an additional $7.50 per week stipend."
 That a court would be more responsive to an application for indigent status in a case which presents an issue of broad impact, see Schweitzer v. Scott, 469 F.Supp. 1017, 1019 (C.D.Cal.1979):
 "The Court recognizes that some actions present novel issues or questions with impact far beyond the bounds of the case sub judice. In those civil cases, the Court would be more receptive to applications for leave to appeal in forma pauperis."
 
 
 [10]
 In this case, the Court said it did not "endorse a niggardly interpretation or application of § 1915 that so rigidly employs the filing fee as a talisman which demarcates paupers from those considered to have funds sufficient to be able to pay it." Id. at 716. This language could be construed to be a denial of judicial power to refuse indigent status upon the filing of the appropriate affidavit. We doubt this was the intention of the court; rather, as we read the decision, it considered the available fund too small to require payment of the filing fee
 
 
 [11]
 Typical of these cases is Braden v. Estelle, supra, 428 F.Supp. 595
 
 
 [12]
 In Carter, the Court said, at 942:
 "In determining whether plaintiff should be entitled to proceed to final resolution without prepayment of costs, this Court is not bound by plaintiff's economic status on the date of filing (citing cases). Rather, the Court should, if necessary, take into account all relevant changes in plaintiff's financial condition, both prior to and subsequent to the filing of suit.