672 F.2d 702
 George GOFF, Appellee,
v.
Jim MENKE; David Scurr; Don Ashinbrener; Don Menke; and John
Ossians, Appellants.
George GOFF, Appellant,
v.
Jim MENKE; David Scurr; Don Ashinbrener; Don Menke; and John
Ossians, Appellees.
 Nos. 81-2041, 81-2109.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 12, 1982.
Decided March 18, 1982.
 
 Thomas J. Miller, Atty. Gen. of Iowa, John G. Black, Sp. Asst. Atty. Gen., Craig S. Brenneise, Asst. Atty. Gen., Des Moines, Iowa, for appellants.
 Paul H. Rosenberg, Rosenberg & Margulies, Des Moines, Iowa, for appellee.
 Before LAY, Chief Judge, STEPHENSON, Circuit Judge, and GIBSON,* District Judge.
 LAY, Chief Judge.
 
 
 1
 The security director at the Iowa State Penitentiary, Jim Menke, appeals from the order of the district court, the Honorable Donald E. O'Brien presiding, granting relief to George Goff, an inmate at the penitentiary. Because Goff is a member of a class whose suit was both filed prior to his individual action and involves the issue raised in this action, we vacate and remand his claim for equitable relief to the district court with instructions to dismiss this claim without prejudice and to instruct Goff to pursue any further equitable relief through the class representative in the pending class action.
 
 
 2
 Facts.
 
 
 3
 As a result of misconduct, Goff was, at the time he filed his complaint, in administrative segregation. On October 17, 1980, plaintiff filed a pro se complaint in federal court alleging denial of sufficient exercise in violation of a preliminary injunction issued in Gavin v. Ray, No. 78-62-2 (S.D.Iowa May 1, 1978) (order granting preliminary injunction), and denial of his fourteenth, eighth, and first amendment rights. In his complaint, Goff requested (1) that defendant be ordered to immediately stop suspending prisoners' right to exercise; (2) that plaintiff be given $1,000 from each defendant; (3) that plaintiff be removed from "the hole" and placed back in the general population; and (4) that he receive $10,000 in punitive damages "and whatever else the court deems proper." Trial was held on February 6, 1981. Goff appeared pro se with the "legal assistance" of a fellow inmate. The district court granted equitable relief, but denied money damages.
 
 
 4
 In addressing the issue of equitable relief, the district court stated that it "was appropriate in this case to fashion a remedy which would run to the benefit of all inmates similarly situated to plaintiff without actually certifying a class action." In evaluating Goff's claim, Judge O'Brien both interpreted the Gavin order and directly evaluated the eighth amendment issue. Gavin involves conditions of confinement and procedures affecting prisoners in administrative and disciplinary segregation at the Iowa State Penitentiary. In Gavin, a class of inmates in administrative or disciplinary segregation was certified on July 23, 1980. In granting the preliminary injunction in Gavin, Judge William C. Hanson ordered:
 
 
 5
 Defendants shall ensure that plaintiffs and others who may be confined in either an administrative or disciplinary status for a period of thirty consecutive days or more are each afforded an opportunity for a total of one hour of exercise each week, except weekly exercise need not be afforded to an inmate who is serving a punishment of 10 days solitary confinement or less.
 
 
 6
 Judge O'Brien found that prison officials initially interpreted this order as not requiring any exercise until a prisoner had been in administrative or disciplinary segregation for 30 consecutive days. He held that the order required exercise beginning the first week of segregation.
 
 
 7
 Judge O'Brien then found that the prison had revised its original policy and, at the time of trial, permitted security unit inmates two one-hour exercise periods per week. He held that this policy "is constitutionally adequate for those inmates placed in such status for a period of thirty days or less." But the court also held that "(f)or inmates in restricted status for a longer period, the weekly exercise period should be increased."
 
 
 8
 Although plaintiff's complaint did not directly raise the issue, Judge O'Brien next addressed the issue of exercise clothing. He found that prisoners were not provided with clothing suitable for outdoor exercise during the winter. Judge O'Brien held that the prison had violated an order of Judge Harold D. Vietor in a class action entitled Lenz v. Baughman, No. 79-81-2 (S.D.Iowa June 20, 1980). Judge Vietor ordered prison officials to provide the prisoner plaintiffs with "adequate exercise clothing in winter." Judge O'Brien granted certain specified relief for inmates in security status.
 
 
 9
 Issues.
 
 
 10
 The State urges that the district court erred in granting class-wide relief or any relief when the issues had already been preliminarily resolved and were pending final resolution in a class action to which plaintiff, as a class member, was a party. We must agree.
 
 
 11
 In deference to the district court, we think the State erred in its original position statement. The State did not move for consolidation of this case with Gavin. Furthermore, the State informed the trial court that the issues presented in this case were not related to the issues in Gavin. We disagree. For reasons of law as well as judicial economy Goff's case should have been transferred to the trial judge who entered the preliminary relief in the Gavin case and, to the extent that injunctive relief was sought, Goff should have been required to proceed through the class representative or through intervention. He could have pursued his individual damage claim in the same court.
 
 
 12
 Two of the primary purposes underlying Fed.R.Civ.P. 23 are avoidance of both duplicative litigation and inconsistent standards. Amendments to Rules of Civil Procedure advisory committee notes, 39 F.R.D. 69, 100, 102-03 (1966). Both of these policies are undermined when two suits challenging the same prison conditions are allowed to proceed.
 
 
 13
 After rendition of a final judgment, a class member is ordinarily bound by the result of a class action. This court has on several occasions refused to allow prisoners to relitigate issues decided in prior class actions. Smallwood v. Missouri Bd. of Probation and Parole, 587 F.2d 369 (8th Cir. 1978); Cotton v. Hutto, 577 F.2d 453 (8th Cir. 1978). If a class member cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified. If class members seek individual money damages, the district court can dispose of those claims on an individual basis. However, in order to avoid duplicative actions as well as inconsistent interpretations of the same decree, wherever possible the individual claims should be processed by the same court which renders the equitable relief.
 
 
 14
 Judge O'Brien could have dismissed plaintiff's complaint without prejudice and instructed plaintiff to seek the cooperation of the class representative in Gavin or to intervene in the Gavin action. He might also have held the damage action in abeyance pending resolution of Gavin. See Cotton, 577 F.2d at 454. Additionally, he might have treated Goff's pro se complaint as an attempt to initiate contempt proceedings and transferred it to the Gavin docket. See Cotton v. Hutto, 577 F.2d at 454 (8th Cir. 1978).
 
 
 15
 We find that it was an abuse of the district court's equitable power to use plaintiff's complaint-which essentially requested damages and sought to enforce the requirements of the Gavin preliminary injunction-to establish class-wide standards governing exercise and exercise clothing. We vacate the equitable relief granted below and remand this claim to the district court with instructions that it should be dismissed without prejudice.[1]
 
 
 16
 The State informs this court that there are several standing injunctive orders and numerous federal actions separately pending which challenge various conditions at the Iowa State Penitentiary. We view this situation as inefficient; it presents a risk of inconsistent adjudications, and confuses and exhausts prison officials, inmates, and judicial officers. Particularly after the recent riot at the prison and the resulting suspension of normal procedures, we believe it is important to resolve these issues expeditiously and in a manner which will provide clear guidance to prison officials and inmates.
 
 
 17
 We thus request the Chief Judge of the District Court for the Southern District of Iowa, the Honorable William C. Stuart, to afford both the State and the respective counsel in all pending actions an opportunity to be heard in relation to consolidation of all pending actions which seek injunctive relief relating to constitutional standards governing the conditions of confinement at the Iowa prison. See Finney v. Mabry, 458 F.Supp. 720 (E.D.Ark.1978) (consolidated class actions concerning Arkansas prisons); Fed.R.Civ.P. 42(a).[2] The State has submitted to this court some suggestions as to consolidation of the various pending cases which will be forwarded to Judge Stuart. This court does not make direction as to consolidation; that decision belongs more appropriately within the studied discretion of Chief Judge Stuart. We do suggest, however, that efforts to consolidate all claims relating to conditions of confinement in a single class suit would bring about more efficient handling of prisoner complaints, obviate inconsistent decrees, and provide a better overview of the interrelated subject areas relating to conditions within the penitentiary.
 
 
 18
 The district court is reminded of the limited role it should play in passing on the constitutional standards governing prison policy. Although courts can no longer remain aloof from inhumane conditions within penitentiaries, the judiciary nonetheless must avoid any attempt to mandate administrative details or requirements. Control of the administrative details of state prisons lies exclusively in the hands of state officials.
 
 
 19
 At the same time, the State should realize that prisoners do not forfeit their basic constitutional right to be treated fairly and humanely. Prisoners are not confined in order to be subjected to further punishment; their confinement is their punishment. They are entitled to the basic necessities of human life and, above all else, to humane treatment. When state prisons fall below these minimal constitutional standards, the judicial branch must, upon proper complaint, assume jurisdiction.
 
 
 20
 The federal courts possess selfish reasons for urging state officials to maintain constitutionally adequate prisons. The overload of prisoner litigation in the federal courts is staggering; today there are over 19,000 petitions from state prisoners pending in the federal district courts. Similarly, state officials complain of the expense and inefficiency involved in processing these numerous complaints. As we have mentioned, in the state of Iowa alone there are now over 150 individual complaints.
 
 
 21
 We perceive three basic steps the State of Iowa can take to relieve itself of the large volume of complaints and to assist the federal courts in reducing litigation. The first is axiomatic; the State must do everything within its ability to provide fair and humane confinement of its prisoners. This requires a continuing reexamination of its physical facilities and its overall prison policies to assure their compatibility with constitutional standards. Second, it is obvious that much of the present litigation is caused by prisoner "writ writers," inmates who possess little or no legal training. The State would be well advised to afford prisoners access to legal counsel for consultation and for processing viable grievances. Legal aid centers at the two law schools in the state could assist in these tasks and in the actual litigation. Many grievances can be clarified, consolidated, or entirely eliminated by adequate counseling prior to filing. In this way, the number of frivolous petitions filed in federal court could be drastically curtailed.
 
 
 22
 Finally, we urge the State of Iowa to adopt a prisoner grievance procedure. Such a procedure would provide an internal mechanism for airing prisoners' grievances and enforcing constitutional standards. Federal courts can require exhaustion of such a remedy in section 1983 actions if the procedure is certified by the Attorney General pursuant to 46 Fed.Reg. 48,181 (1981) (to be codified at 28 C.F.R. § 40), or if the court determines that the remedy is in substantial compliance with the minimum acceptable standards promulgated under 42 U.S.C. § 1997e(b). 42 U.S.C. § 1997e. Such a procedure would provide prisoners with a more accessible and quicker remedy and remove a significant number of cases from the federal docket.
 
 
 23
 The judgment of the district court granting equitable relief is vacated and remanded with directions to dismiss the complaint without prejudice.
 
 
 
 *
 John R. Gibson, United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 Goff did not cross-appeal on the district court's denial of other relief
 
 
 [2]
 District court judges have wide discretion to stay class actions to avoid duplicitous litigation. 3B J. Moore, Moore's Federal Practice P 23.93 (2d ed. 1981)