**In re Jewell WILLIAMSON, Petitioner.**

**No. 86–1382.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1985.

Decided March 31, 1986.

Rehearing Denied June 9, 1986.

Floyd R. Finch, Jr., Kansas City, Mo., for petitioner.

John L. Oldenburg, Jr., Jefferson City, Mo., for respondents.

Before HEANEY, ARNOLD and JOHN R. GIBSON, Circuit Judges.

HEANEY, Circuit Judge.

Jewell Williamson, an inmate of the Missouri State Penitentiary, petitions this Court under Rule 21(a) of the Federal Rules of Appellate Procedure for a writ of mandamus directing the Honorable Scott O. Wright, Chief United States District Court Judge for the Western District of Missouri, and the Honorable Richard H. Ralston, United States Magistrate for the district, to process his 42 U.S.C. § 1983 complaint in forma pauperis without the payment of a partial filing fee. We deny the petition for a writ of mandamus but, pursuant to the supervisory powers of this Court, we set forth standards to be followed by district courts with respect to partial filing fees in prisoner civil rights appeals.

## I. PROCEDURAL BACKGROUND

The United States District Court for the Western District of Missouri recently adopted a practice [1] of requiring a partial filing fee in civil rights actions instituted by prisoners. Although the judges and magistrates in the Western District of Missouri apparently do not apply this practice uniformly,[2] typically the district court files the complaint provisionally when the prisoner requests leave to proceed in forma pauperis, and subsequently determines whether the prisoner should (1) be granted unconditional leave to proceed in forma pauperis, (2) pay the entire filing fee, or (3) pay a portion of the fee. If the district court determines that the prisoner should pay a partial fee, the amount of the fee is fifteen percent of the income received by the inmate during the six months prior to filing the complaint, usually payable in four to six equal monthly installments. The inmate may then file written objections explaining why he should not be required to pay a partial filing fee. If the district court determines that the partial fee is appropriate after the inmate files his objections, the inmate's failure to pay the fee usually results in dismissal without prejudice of his complaint.

On December 14, 1984, Williamson filed a section 1983 complaint against Lee Roy Black, Director of the Missouri Department of Corrections; Bill Armontrout, Warden of the Missouri State Penitentiary; and three physicians, Drs. Benitez, Mack, and Marvin. Williamson alleged that the defendants were deliberately indifferent to his serious medical needs in violation of the eighth amendment by failing to provide corrective surgery for Williamson's ruptured hernia.[3] Williamson's complaint was provisionally filed in forma pauperis, and the case was referred to Magistrate Ralston for review under 28 U.S.C. § 636. Magistrate Ralston reviewed the complaint and, on January 7, 1985, ordered the defendants to show cause why Williamson should not be granted unconditional leave

---

1. This practice of requiring a partial filing fee is not published as an en banc order or as a local rule.

2. Apparently, some judges determine whether to require a partial filing fee in every prisoner civil rights action assigned to them, while other judges make this determination only when the defendants raise the issue, and still others have refused to adopt the practice entirely.

3. Williamson alleged that in April, 1983, the Missouri State Penitentiary medical staff diagnosed him as suffering from a ruptured hernia in need of corrective surgery. Williamson filed his complaint in December, 1984, nearly twenty months after he was diagnosed as needing corrective surgery. As of October, 1985, when Williamson's petition for mandamus relief was argued before this Court, his condition still had not been repaired.

to proceed in forma pauperis. The defendants argued that Williamson's complaint was legally frivolous, and should be dismissed under 28 U.S.C. § 1915(d). On March 27, 1985, the magistrate ruled that Williamson's complaint was not frivolous, and granted Williamson unconditional leave to proceed in forma pauperis.

The defendants then timely filed a motion requesting Magistrate Ralston to reconsider granting Williamson unconditional in forma pauperis status, contending that Williamson had sufficient assets and income to pay a portion of the filing fee under the district court's partial payment plan. The magistrate reviewed a record of the transactions in Williamson's inmate trust account and, on May 10, 1985, granted the defendants' motion for reconsideration. Based on the district court's formula for calculating the partial fee, the magistrate determined that Williamson could pay a partial fee of $20.80 in four $5.20 monthly installments. Williamson filed objections to the magistrate's ruling, and Chief Judge Wright affirmed Magistrate Ralston's order. Although Williamson has not paid the partial filing fee, the district court has not dismissed Williamson's action, and is allowing him to proceed pro se pending this Court's ruling on Williamson's mandamus petition.

## II. DISCUSSION

■ The issues raised in Williamson's petition for a writ of mandamus are whether a district court has the authority under 28 U.S.C. § 1915 to require a partial filing fee, and if so, whether the practice adopted by the United States District Court for the Western District of Missouri is proper.

Federal courts have the statutory authority to permit the commencement of a civil action without prepayment of fees or costs "by a person who makes affidavit that he is unable to pay such costs or give security therefor." 28 U.S.C. § 1915(a). Section 1915 contains no provision indicating that a court may require a litigant to pay a portion of the fees and costs if he cannot pay the full amount. However, in *Braden v.*

*Estelle*, 428 F.Supp. 595 (S.D.Tex.1977), the court reasoned that

> [t]he permissive language of 28 U.S.C. § 1915 authorizes the court, in its discretion, to determine who is entitled to the benefits of litigation without cost.
>
> \* \* \* \* \* \*
>
> It is logical that if the court may grant a waiver of 100 percent of the costs on such a variety of items, the court also is vested with the discretion to waive a lesser percentage of such costs.

*Id.* at 598–99.

The courts of appeals that have reviewed partial payment plans have held that a district court has the authority under section 1915 to require an indigent litigant to pay at least minimal service and filing fees when evidence of the litigant's present financial situation indicates that he may tender the payment without undue financial hardship. *E.g., Jones v. Zimmerman,* 752 F.2d 76 (3d Cir.1985); *Collier v. Tatum,* 722 F.2d 653 (11th Cir.1983); *Smith v. Martinez,* 706 F.2d 572 (5th Cir.1983); *Evans v. Croom,* 650 F.2d 521 (4th Cir. 1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982); *Zaun v. Dobbin,* 628 F.2d 990 (7th Cir.1980); *In re Stump,* 449 F.2d 1297 (1st Cir.1971). We have no quarrel with this principle. We believe, however, that certain requirements and limitations must guide the district court's discretion in this matter.

The very purpose of section 1915 "is to provide an entre, not a barrier, to the indigent seeking relief in the federal court." *Souder v. McGuire,* 516 F.2d 820, 823 (3d Cir.1975). Accordingly, "[w]e cannot accept a construction of this statute which conditions the presentation of possibly meritorious claims on the plaintiff's willingness to become completely destitute." *In re Smith,* 600 F.2d 714, 715 (8th Cir.1979); *see also Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339–40, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948) (one need not make himself wholly destitute to enjoy the benefits of in forma pauperis statute).

We recognize the unique status of an inmate seeking to proceed in forma pauperis in that he is assured of the basic necessities of life at the state's expense. Thus, it would appear that requiring an inmate to pay a partial filing fee would not render the inmate "completely destitute." However, an inmate should not be denied in forma pauperis status simply because he may be able to pay for some small physical and material comforts, severely limited though they may be, within the prison. We reiterate that "we do not think that prisoners must totally deprive themselves of those small amenities of life which they are permitted to acquire in a prison * * * beyond the food, clothing, and lodging already furnished by the state * * * to litigate in forma pauperis in the district court." [4] *Smith*, 600 F.2d at 716 (quoting *Souder*, 516 F.2d at 824 (footnote omitted)). As with any other litigant, indigency for a prisoner under section 1915 is not synonymous with absolute pennilessness. *Smith*, 600 F.2d at 716.

Yet, we have also recognized that section 1915 "was not enacted for the purpose of requiring the public to underwrite frivolous lawsuits." *Id.* at 715. Partial payment plans are designed to help curb the indiscriminate filing of frivolous lawsuits "by weeding out those [actions] where it appears the plaintiff himself has some financial resources but has such lack of good

faith in his action that he is unwilling to make any contribution, however small, towards meeting its filing costs." *Evans*, 650 F.2d at 523.[5] Thus, proponents of partial payment plans assume that the number of frivolous lawsuits filed in the district court will decrease if an inmate is confronted with "the initial dilemma which faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it?" *Carroll v. United States*, 320 F.Supp. 581, 582 (S.D.Tex.1970); *see, e.g., Collier*, 722 F.2d at 655; *Smith*, 706 F.2d at 573; *Evans*, 650 F.2d at 523.

We are, of course, cognizant of the increase in prisoner civil rights actions filed in the district courts within this circuit. *See Goff v. Menke*, 672 F.2d 702, 705 (8th Cir.1982). A recent study conducted by the Federal Judicial Center, however, indicates that partial payment plans have not significantly reduced the number of prisoner civil rights actions filed, nor have these plans been successful in "weeding out" frivolous actions. *See generally* T. Willging, *Partial Payment of Filing Fees in Prisoner In Forma Pauperis Cases in Federal Courts: A Preliminary Report* (Federal Judicial Center 1984) [hereinafter *"Federal Judicial Center Report"*]. Moreover, there are other effective methods of decreasing the number of civil rights actions

---

**4.** The Missouri Department of Corrections and Human Resources "has a policy in operation which provides indigent inmates with soap, toothpaste, shaving cream, deodorant, stamps, etc. The department also offers tobacco to all inmates who desire to use this product." Letter from Dr. Lee Roy Black, Director of the Missouri Department of Corrections and Human Resources, to the United States Court of Appeals for the Eighth Circuit (December 3, 1985). Although the Department's definition of indigency is unclear, in an affidavit submitted by Williamson to the district court on April 17, 1985, Williamson stated that he must purchase his own toothbrush, toothpaste, deodorant, hair dressing, hand and body lotion, razor, razor blades, paper, envelopes, postage, and additional seasonal clothing. Certainly, an inmate should not be required to deprive himself of these few items to litigate a possibly meritorious claim in district court.

**5.** The Court in *Evans* continued:

The type of actions at which the rule is directed, though generally stated in passable *pro forma* allegations, considering the liberality in pleading allowed *pro se* complaints, has proved all too often to be without merit and frequently appears to have been begun without any real hope of success as "mere outlets for general discontent in having to undergo penal restraint or of personal satisfaction in attempting to harass prison officials" or to enjoy what one describes as a prisoner's "field day in the courts, at public expense," *Weller v. Dickson*, 314 F.2d 598, 601 (9th Cir.1963), *cert. denied* 375 U.S. 845, 84 S.Ct. 97, 11 L.Ed.2d 72. If the prisoners, by filing an indigent affidavit in such actions, may acquire at will indigent status, they will have every incentive to indulge any inclination they may have to harass their custodian.

*Evans*, 650 F.2d at 523 (footnote omitted).

filed by prisoners in federal court.[6] Nevertheless, section 1915 does not prohibit a district court from implementing a partial payment plan. However, the district courts' discretion in implementing a partial payment plan is not unbridled.

We have reviewed the various plans approved in the other circuits and the Federal Judicial Center's Report. Based on this review, we conclude that any partial payment plan within this circuit must, consistent with the Federal Judicial Center's Report, contain at a minimum the following features.

First, any partial payment plan should be published as a local rule or en banc order, and should be uniformly applied by each judge within the district. A local rule is more widely disseminated, and therefore is preferable. *Federal Judicial Center Report* at 26. Information concerning the plan should be attached to the application forms for in forma pauperis petitions and on the affidavits in support of the petitions. *Id.* at ix.

Second, the partial fee must be based upon a small, but fixed, percentage either of the assets available in the inmate's prison trust account at the time the complaint is filed, or of the inmate's average monthly income. *Id.* at 25–26.[7] If average monthly income is used, small gifts, including those received during the December holiday, should not be included in the computations. *Id.* at 26. It will be up to the district court to decide how to compute average monthly income. We suggest that a period of two to six months before the filing of the complaint be used for this purpose, subject to the exclusion of gifts, as just mentioned. The plan may provide for payment all at once or in reasonable installments. Although section 1915 does not provide for the payment of fees in installments, *see Caldwell v. United States*, 682 F.2d 142, 143 (7th Cir.1982), the statute does not forbid such a system, either, just as it neither expressly authorizes nor expressly forbids partial filing fees themselves. The district court should have the latitude of making this choice.

The inmate should also be given a reasonable opportunity to see and respond to the account information submitted by the prison officials so that he may, if necessary, correct any misinformation or misleading inferences that may be drawn from the information, *e.g., Jones*, 752 F.2d at 79, or demonstrate special circumstances justifying the payment of an even lower fee. *Evans*, 650 F.2d at 525; *Federal Judicial Center Report* at 26–27.

If the plan is keyed to the plaintiff's current account balance, the district court may require a fee higher than the fixed percentage of the inmate's trust account balance if the inmate has withdrawn assets from his account solely to avoid paying a filing fee. However, before withdrawals from the account may form a basis for requiring a higher fee, the district court must make a specific finding "either from the nature or timing of the withdrawal, or both, or from other specific circumstances, that the purpose of the withdrawal appears to have been intended to avoid his obligation under the rule to pay in whole or in part filing costs." *Evans*, 650 F.2d at 525–26. Before the district court makes this specific finding, the inmate must "be given some reasonable opportunity, after appropriate notice, to explain and refute any

---

6. "The first is axiomatic; the State must do everything within its ability to provide fair and humane confinement of its prisoners. This requires a continuing reexamination of its physical facilities and its overall prison policies to assure their compatability with constitutional standards." *Goff*, 672 F.2d at 706. In addition, providing the prisoners with adequate legal counsel may help clarify, consolidate, or entirely eliminate many grievances before they are filed, thereby curtailing the number of frivolous petitions filed in federal courts. Finally, experi-

ence in this Court indicates that grievance procedures that comply with 42 U.S.C. § 1997e will significantly reduce the number of prisoner civil rights actions. *Id.* See also *Finney v. Arkansas Board of Corrections*, 505 F.2d 194, 200 n. 3 (8th Cir.1974); Lay, *Exhaustion of Grievance Procedures for State Prisoners Under § 1997e of the Civil Rights Act*, —— Iowa L.Rev. —— (1986).

7. The Federal Judicial Center recommends that the fixed percentage be one-third or less.

finding to that effect, just as [the inmate] has a right, after notice, to bring to the court's attention other factors that may authorize either excusing entirely any payment or reducing same." *Id.* at 526; *see also Collier,* 722 F.2d at 655–56; *Federal Judicial Center Report* at 6.

Third, to avoid unreasonable delays in the proceedings, the district court should provisionally file the complaint during the period of investigation until expiration of the time for compliance with the court's order. Should the court determine that the inmate cannot pay a partial filing fee, the court shall grant the inmate unconditional leave to proceed in forma pauperis. During the period of provisional filing, the Court should not stay the action, but should continue to process it in the ordinary course.

Finally, in order that an inmate may realistically confront the initial dilemma that faces most other litigants, "is the merit of the claim worth the cost of pursuing it[,]" *Carroll,* 320 F.Supp. at 582, the inmate must be apprised of what may be expected of him under the partial payment plan. Thus, information concerning the partial payment plan should be distributed to each penal institution within the district for posting in the prison law library. *Federal Judicial Center Report* at 27.

## III. CONCLUSION

■ Although the partial payment plan presently used in the Western District of Missouri does not meet all the minimum standards we have outlined, we deny Williamson's petition for a writ of mandamus confident that the district court will process Williamson's complaint in accordance with this opinion.

JOHN R. GIBSON, Circuit Judge, concurring and dissenting.

I am in full agreement with the standards the Court today announces with respect to partial payment of filing fees. I respectfully disagree only with respect to the application of the "First" standard to this particular case. I would simply remand for application of the remaining standards. After all, our announced standards arise only from the opinion of the Court today. Application of all of the standards, including that contained in paragraph "First" on page 8, will result in Williamson not being required to pay a partial fee solely because there was not a local rule or en banc order authorizing the action of the district court.