In re Lawrence EPPS, Petitioner.

Docket No. 88–3039.

United States Court of Appeals, Second Circuit.

Submitted May 15, 1989.

Decided Nov. 1, 1989.

Jonathan L. Greenblatt, James P. Tallon, Elaine M. Russo, Shearman & Sterling, New York City, submitted a brief for petitioner.

Robert Abrams, Atty. Gen., Peter R. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Daniel Smirlock, Asst. Attys. Gen., Albany, N.Y., submitted a brief for respondents Coughlin and Mann.

Before OAKES, Chief Judge, NEWMAN and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Since 1892 Congress has permitted indigent persons to bring lawsuits in federal courts without prepayment of filing fees. Act of July 20, 1892, ch. 209, 27 Stat. 252 (codified, as amended, at 28 U.S.C. § 1915 (1982)). Recently, many district courts, concerned that this privilege has been abused by prisoners, have adopted rules requiring them to pay partial filing fees, calculated in accordance with various formulas. *See* T. Willging, *Partial Payment of Filing Fees in Prisoner IFP Cases in Federal Courts: A Preliminary Report* (Federal Judicial Center 1984). Within this Circuit, the first district to have adopted such a rule is the Northern District of New York. That District's standing order (hereinafter "the Fee Order"), adopted in 1985, requires a prisoner seeking to proceed *in forma pauperis* in connection with the filing of a civil rights complaint or a petition for habeas corpus to pay a partial filing fee equal to 10 percent of the sums deposited in the prisoner's trust account at the prison during the three months preceding the application, unless a magistrate determines that "special circumstances" justify a lesser amount. The maximum fees under the Fee Order are $5 for habeas corpus petitions and $120 [1] for all other lawsuits, which are the normal filing fees. 28 U.S.C. § 1914(a) (Supp. V 1987). The Western District of New York, by local rule, adopted a similar partial payment requirement effective October 1, 1989.

This petition for mandamus challenges the application of the Northern District's Fee Order to a prisoner who completed the affidavit of indigency required of all *in forma pauperis* applicants but was denied i.f.p. status because he failed to pay a partial fee of $18.47, the sum calculated under the Fee Order. Lawrence Epps seeks a writ of mandamus directing the District Court to file his civil rights complaint, notwithstanding his failure to pay the partial filing fee. Though we acknowledge the authority of a district court to create some modest financial threshold for prisoners unable to afford the normal court filing fees, we conclude that the Northern District's Fee Order was unlawfully applied

---

1. The Fee Order was amended on October 25, 1988, to raise the maximum fee for non-habeas lawsuits from $60, after Congress increased the normal civil filing fee from $60 to $120, Pub.L. 99–500, tit. I, § 101(b), 100 Stat. 1783–64.

to Epps and that he may file his suit upon payment of a fee of $6. We therefore grant the petition for mandamus.

Epps sought to file in the District Court for the Southern District of New York a civil rights complaint, pursuant to 42 U.S.C. § 1983 (1982), against the superintendent of the Shawangunk Correctional Facility, where Epps is confined, and the New York Commissioner of Correctional Services. The complaint, which was transferred to the Northern District of New York, alleged that Epps' prison records erroneously identified him as a high-ranking member of the Black Liberation Army. Epps, who had been in prison for twelve years, accompanied the complaint with a request to proceed *in forma pauperis* and an affidavit of indigency in which he swore that he had no assets and that his income (apparently his prison wage) was "roughly $1.20 a day."

The Clerk of the Northern District, acting pursuant to the Fee Order, ascertained that during the three months preceding the submission of the complaint $184.68 had been deposited in Epps' trust account at the prison and determined that a partial filing fee of $18.47 (ten per cent) was therefore required.[2] The Clerk returned the complaint with instructions to Epps either to pay this fee or submit an affidavit of special circumstances. Epps chose the latter course. He reasserted that his wages did not exceed $1.20 a day and further averred that the average balance in his account for the prior three months had not exceeded $14.60 and that the bulk of these funds had been spent "on necessities such as soap, toothpaste, deodorant, soap powder and various legal items."

Thereafter, Magistrate Ralph W. Smith, Jr., to whom the papers had been presented, concluded that Epps had not demonstrated special circumstances sufficient to warrant relief from the partial payment requirement. He also stated that the form on which the complaint was filed incorrectly reported the number of Epps' prior lawsuits, since to the Magistrate's knowledge

Epps had filed more suits than the form disclosed. The Magistrate directed the Clerk to return the complaint to Epps for correction of the number of prior lawsuits, to await a corrected complaint and the required partial filing fee, and to return all papers if a corrected complaint and fee were not received within 45 days.

Epps then filed in this Court a petition for mandamus to require the District Court to file his complaint without prepayment of the $18.47 fee. He alleged that information concerning his prior lawsuits was unavailable to him. We granted Epps leave to proceed *in forma pauperis* in this Court and appointed counsel. Meanwhile, the 45 days allowed by the Magistrate expired, and upon Epps' failure to submit a fee and a corrected complaint form, the District Court, upon the Magistrate's recommendation, entered judgment dismissing the action.

### Discussion

We encounter a preliminary issue concerning the appropriateness of mandamus. Mandamus is not a substitute for appeal, *Schlagenhauf v. Holder*, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964), and the judgment of the District Court dismissing the action appears to be appealable. Arguably, the Magistrate's order rejecting Epps' application for relief from the partial fee requirement was appealable as a collateral order. On the other hand, it is not entirely clear that the Magistrate's order or the District Court's "judgment" were entered in a filed lawsuit. The Southern District had initially ordered the suit filed, leaving for determination by the Northern District whether the suit should proceed. The Northern District, however, did not fully regard the suit as filed; the Magistrate's order directed the Clerk to "file" the suit upon payment of the required fee, suggesting that the suit had not previously been filed. Under the circumstances, we think that Epps, proceeding *pro se* at the time, was entitled to

---

**2.** Of the three months for which the Clerk and the parties have examined Epps' prison trust account, only one month preceded the presentation of Epps' complaint to the Southern District. However, both sides have assumed that these

three months constitute the relevant period, and we will accept that assumption, especially since the monthly variations do not affect our decision.

believe that when the Magistrate required him to pay the filing fee, mandamus was an appropriate remedy to test the lawfulness of that requirement. *Cf. In re Funkhouser,* 873 F.2d 1076 (8th Cir.1989); *In re Smith,* 600 F.2d 714 (8th Cir.1979).

On the merits, Epps makes no challenge to the validity of the Fee Order, though he suggests that a more appropriate base for calculating the partial fee would be the average balance in the trust account during the prior three months or the sums deposited during the one month prior to the lawsuit. His principal contention, however, is that the Fee Order was unlawfully applied to him because $18.47 is too high a fee to be required of an indigent prisoner in his circumstances. He calculates that the required fee is higher than his average account balance (apparently figured on a daily basis) during the prior three months and that it is 30 percent of his average monthly deposits during this period. The respondent prison officials dispute the average balance calculation, but acknowledge that the account balance at month's end did not average more than $20.

■ All circuits that have considered the issue have upheld the authority of district courts to require prisoners to pay partial filing fees. *See In re Williamson,* 786 F.2d 1336, 1339–41 (8th Cir.1986); *Collier v. Tatum,* 722 F.2d 653, 655 (11th Cir.1983); *Bullock v. Suomela,* 710 F.2d 102, 103 (3d Cir.1983); *Smith v. Martinez,* 706 F.2d 572, 574 (5th Cir.1983); *Evans v. Croom,* 650 F.2d 521, 522–23 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982); *cf. Zaun v. Dobbin,* 628 F.2d 990, 993 (7th Cir.1980) (non-prisoner, *pro se* litigants); *see generally* Note, *Controlling and Deterring Frivolous In Forma Pauperis Complaints,* 55 Fordham L.Rev. 1165, 1181–85 (1987). We share their view. The discretion to waive prepayment of filing fees, conferred upon district judges by Section 1915, need not be exercised on an all-or-nothing basis. The power to waive the entire fee includes the power to waive a portion of it. *See In re Williamson,* 786 F.2d at 1338.

■ We also share the implicit view of the other circuits that it is appropriate to fashion court rules for partial fees that apply only to prisoners. The discretion conferred on district judges by section 1915 is to be exercised so as not to deprive litigants of the "last dollar they have," *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948), nor the "necessities of life," *Potnick v. Eastern State Hospital,* 701 F.2d 243, 244 (2d Cir.1983). But what constitutes the "necessities of life" that must be purchased is obviously different for prisoners, most of whose necessities are paid for by the jurisdiction that incarcerates them.

■ We think the judges of the Northern District have acted within their discretion in using a prisoner's trust account deposits for the prior three months as the basis for determining his ability to pay a reasonable partial filing fee. *See Evans v. Croom,* 650 F.2d 521 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982) (approving use of prior six months' deposits as base for calculating reasonable partial filing fee). Though the Fee Order's application of a flat 10 percent figure to the total deposits during the prior three months can in some circumstances produce an unreasonably high partial fee, *cf. id.* at 525 (approving rule that set 15 percent of prior six months' deposits as the *maximum* partial fee), the potential rigor of the Fee Order is substantially mitigated by its provision for relief where "exceptional circumstances" render the prisoner "unable to pay" the fee. Fee Order par. 3. Of course, if this relief provision of the Fee Order were applied literally to require payment of the full 10 percent unless the prisoner's account lacked a sufficient balance, it would not afford relief even where the 10 percent payment would reduce the account to a sum at or just slightly above zero, a result at odds with *Adkins* and *Potnick.* Construed in light of those decisions, the relief provision must mean "unable to pay and still be able to afford 'necessities of life' within the context of imprisonment." In determining whether 10 percent of the prior three months' deposits yields a fee from which relief is warranted, the absolute amount of the fee and the relationship of the fee to the prisoner's current balance

should be examined, though we recognize that a temporarily low balance may sometimes be the distorted result of unusual withdrawals. *See Collier v. Tatum,* 722 F.2d 653, 655 (11th Cir.1983); *In re Stump,* 449 F.2d 1297, 1298 (1st Cir.1971).

Thus, the issue in this case is whether it was beyond the discretion of the District Court to withhold the benefit of the Fee Order's relief provision, so construed, under the circumstances of Epps' finances. To resolve that question we examine the responses of other circuits that have considered the reasonableness of particular fee amounts. A fee has been deemed too high in the following circumstances (ranked by amount of fee): $20 fee with $5 in prison account and average monthly balance of $13, *Johnson v. Kemp,* 781 F.2d 1570 (11th Cir.1986); $15 [3] fee with less than $50 in prison account, *In re Smith,* 600 F.2d at 714–15; $12 fee with $30 in prison account and $40 in deposits during two prior months, *Green v. Estelle,* 649 F.2d 298 (5th Cir. Unit A 1981); $5 fee (for habeas corpus petition) with $17 in prison account and monthly income of $31, *Jones v. Zimmerman,* 752 F.2d 76 (3d Cir.1985); $5 fee (for habeas corpus petition) with $50 in prison account and $30 in average monthly income, *Souder v. McGuire,* 516 F.2d 820 (3d Cir.1975); $4 fee with $4.76 in prison account and $24 in average monthly deposits, *Bullock v. Suomela,* 710 F.2d at 103.

A partial fee has been deemed reasonable in the following circumstances (also ranked by amount of fee): $15 fee in each of four cases with $140 in prison account (though account subsequently drawn down to 30 cents), *Collier v. Tatum, supra;* $15 fee with prison account conceded to contain $78 and claimed by prison to contain $218, *In re Stump, supra;* $8 fee with $27 in prison account and $30 in monthly income, *Williams v. Estelle,* 681 F.2d 946 (5th Cir. 1982); $7.20 fee, *Lumbert v. Illinois Dep't of Corrections,* 827 F.2d 257 (7th Cir.1987); $3 fee with 3 cents in prison account and $35 received in prior three months and $20 received monthly from family, *Smith v. Martinez,* 706 F.2d 572 (5th Cir.1983).

The appropriate amount of a partial fee for prisoners has been assessed by some in the language of economics. For example, Judge Posner has noted that litigation is not a "free good" and has expressed special concern over litigation by indigents that "generates social costs in excess of its social benefits." *Lumbert v. Illinois Dep't of Corrections,* 827 F.2d at 259. We are inclined not to think of the matter purely in economic terms, sharing the view of Judge Posner's colleague, Judge Cudahy, who suggested in a related context that "the laws of economics take a different turn when prison walls intervene." *Merritt v. Faulkner,* 697 F.2d 761, 768–69 (7th Cir. 1983) (Cudahy, J., concurring), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983). We do not agree with Judge Posner that the amount of a partial fee is appropriate simply because a prisoner has the funds to pay it but prefers to devote his limited resources to commissary purchases that may seem readily dispensable to one not in confinement. *See Lumbert v. Illinois Dep't of Corrections,* 827 F.2d at 260 ("If the inmate thinks that a more worthwhile use of his funds would be to buy peanuts and candy ... than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor.").

At the same time, we agree with Judge Posner that prisoners should be made to "think twice—by monetary exactions well within their ability, limited as it is," *Id.* at 259, before filing a suit. Thinking twice in this context, however, is sufficiently stimulated by a payment of modest proportions, one that simply obliges the prisoner to make a discrete choice between the lawsuit and a small purchase. To require the prisoner to part with a substantial portion of meager monthly income does more than prompt a second thought, it creates a deterrence to litigation incompatible with at least the spirit of the *in forma pauperis* statute.

■ For a prisoner like Epps with an average monthly income of just $61.53 and an average balance at the end of each

---

**3.** The normal filing fee in district courts was $15 from 1948 until 1978 when it was raised to $60. Pub.L. 95–598, tit. II, § 244, 92 Stat. 2671. It is currently $120. 28 U.S.C. § 1914(a) (Supp. V 1987). The filing fee for habeas corpus petitions has remained at $5. *Id.*

month of no more than $20, a payment of $18.47, which is 30 percent of average monthly income (10 percent of three months total income), crosses the line between prompting a second thought and deterring litigation. At Epps' modest level of income and assets, a fee of about 10 percent of average monthly income is a sufficient exaction. We will modify the required partial filing fee from $18.47 to $6.

In addition to requiring a filing fee of $18.47, the Magistrate ordered Epps to submit a "correct" form with his *in forma pauperis* application, furnishing required information concerning prior lawsuits. The form used by the Southern District, where Epps originally sought *in forma pauperis* status, requires, for each prior lawsuit relating to the applicant's imprisonment, identification of the parties, the court, the docket number, the judge, the disposition, and the approximate dates of filing and disposition. Epps supplied details concerning four prior lawsuits, including two in the Northern District. The Magistrate deemed the application false because of the Magistrate's awareness of six suits in that District. Epps contends that the information lacking from his application is unavailable to him.

 We see no reason why a court may not oblige prisoners to supply available information concerning prior lawsuits that concern their incarceration. Such information may assist a court in identifying suits that are repetitious of prior or pending lawsuits and hence frivolous within the meaning of 28 U.S.C. § 1915(d). At the same time, discretion must be soundly exercised concerning the required completeness of such information to avoid foreclosing "meaningful" access to courts, *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), because of a prisoner's faulty memory. In the absence of any indication that a prisoner is acting in bad faith to conceal his prior litigation history from a court, he should not be barred at the outset because of failure to furnish every fact concerning prior lawsuits. If further information known to the litigant is important to the consideration of his lawsuit, he may be required to furnish such details, upon pain of having his suit dismissed, as with any unjustified failure concerning discovery.

 In this case, Epps reported details concerning four prior lawsuits, two in the Northern District. He does not deny the Magistrate's assertion that he has filed six suits in the Northern District, but claims that the required information is not available to him. That claim is too broad. It should be no burden for Epps to inform the District Court of his best good-faith recollection of his prior lawsuits, including the required information concerning them. Even if he cannot remember some details, such as docket numbers, he should furnish such information as he recalls and should represent that he has provided all of the required information that he does recall concerning all of his prior lawsuits.

Accordingly, we will direct that a writ of mandamus issue, requiring the District Court to grant Epps leave to proceed *in forma pauperis* so that his lawsuit may receive further consideration, upon his furnishing within 30 days a partial filing fee of $6 and a disclosure of information concerning his prior lawsuits consistent with this opinion.