**Randal N. WIIDEMAN, Plaintiff,**

v.

**Michael J. HARPER, et al., Defendants.**

**No. CV–N–88–192–ECR.**

United States District Court,
D. Nevada.

Nov. 2, 1990.

Randal N. Wiideman, Ely, Nev., in pro. per.

Brian McKay, Atty. Gen., Carson City, Nev., for defendants.

ORDER

EDWARD C. REED, Jr., Chief Judge.

Plaintiff filed this action *in forma pauperis* on October 26, 1988, asserting claims under 42 U.S.C. § 1983 alleging deprivations of rights secured by the First and

Fourteenth Amendments to the United States Constitution. Plaintiff, an inmate in the Nevada Department of Prisons, contends that defendants denied him possession of a typewriter for doing legal work for other prisoners.

On February 14, 1990, defendant Robert Bayer filed a Motion to Dismiss the Action or in the alternative, a Motion for Order to Plaintiff to Pay Fees and Costs. Defendant asserts that plaintiff has recently received $1,000.00 from a settlement in regard to eleven pending actions against various defendants. Defendant contends that the present action should be dismissed pursuant to 28 U.S.C. § 1915(d) or that plaintiff should be required to reimburse the Government for fees and costs that were previously waived in accordance with his leave to proceed *in forma pauperis.*

Plaintiff filed a response on February 21, 1990, asserting that the money he received in the settlement was paid directly to his mother, who is allegedly destitute and financially dependent upon social security as her sole source of income. Thus, plaintiff argued he was still a pauper. The United States Magistrate Phyllis Halsey Atkins issued an order on June 7, 1990 (document # 44) finding that plaintiff "controlled disbursement of the funds" and "had the authority to substantially change his economic status, but instead chose to forego having the money deposited into his inmate account."

The Magistrate determined that plaintiff should have an opportunity to pay the costs related to the action as though he had not been granted leave to proceed *in forma pauperis* and that the failure to pay these costs may result in the dismissal of the action. The Magistrate ordered plaintiff to pay the costs related to the action within 30 days of the date of the order.

On August 9, 1990, after plaintiff refused to pay the ordered costs, the Magistrate filed a Report and Recommendation (document # 45) recommending that defendant's motion to dismiss be granted. Neither plaintiff nor defendants have filed any objections to the Magistrate's Report and Recommendation.

28 U.S.C. § 1915(a) provides: "Any court ... may authorize the commencement, prosecution or defense of any suit ... without prepayment of fees and costs ... by a person who makes affidavit that he is unable to pay such costs ..." Under this statute, the court has the discretion to require a prisoner plaintiff granted *forma pauperis* status at the time of filing the suit, to pay filing fees once "financial circumstances change:"

> The use of the word 'prepayment' in subsection (a) indicates that Congress did not intend to waive forever the payment of costs ... It is clear that § 1915 contemplates the postponement of fees and costs for litigants who are granted *in forma pauperis* status.

*Flint v. Haynes,* 651 F.2d 970, 972 (4th Cir.1981).

■ A court is not bound by its grant of *forma pauperis* status to a plaintiff:

> [T]his court is not bound by plaintiff's economic status on the date of filing ... Rather, the court should take into account all relevant changes in plaintiff's financial condition, both prior to and subsequent to the filing of the suit.

*Carter v. Telectron, Inc.,* 452 F.Supp. 939, 942 (S.D.Tex.1976). Thus, this court may retroactively require plaintiff to pay fees and costs if his financial situation has improved.

Under § 1915(d), the court may "dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." This court does not purport to pass on the merits of plaintiff's case at this time. We briefly note that under § 1915(e), should the Magistrate allow plaintiff to proceed *in forma pauperis* and should plaintiff ultimately litigate his claim unsuccessfully, the court could impose costs at that time, at its discretion, based on the frivolity or maliciousness of his claim.

■ Having concluded that plaintiff could lose his *forma pauperis* status, we now consider plaintiff's ability to pay fees and costs. One court held that a prisoner with *forma pauperis* status who acquired

$5486.76 after filing his case, lost his status just because he acquired enough money to pay the filing fee, despite stating under oath that he used the money to support an ill wife and daughter. *Carter, supra.* "It is of little moment to this Court that plaintiff has decided his funds must be used for other purposes or even that he has exhausted the court award ..." *Id.* at 999. The Magistrate followed *Carter.*

We do not adopt such a rigid view. First, § 1915 does not require a plaintiff to choose between paying a filing fee and supporting himself or his family. *Lumbert v. Illinois Dep't of Corrections,* 827 F.2d 257, 260 (7th Cir.1987). While the *Carter* and *Lumbert* courts held how the prisoner spent his money irrelevant, the court in *In re Epps,* 888 F.2d 964 (2nd Cir.1989), disagreed, noting "We do not agree with Judge Posner that the amount of a ... fee is appropriate simply because a prisoner has the funds to pay it but prefers to devote his limited resources to commissary purchases that may seem readily dispensable to one not in confinement." *Id.* at 968. Thus, the *Epps* court also rejected the rigid *Carter* view. Second, courts have recently begun to consider many factors in determining a prisoner's ability to pay, and have often resolved the issue by requiring the prisoner to pay only a part of the normal fees.

Factors courts look to in deciding whether a plaintiff may proceed *in forma pauperis* include: whether the plaintiff would have to spend his last dollar on filing fees (*Carter, supra,* at 943) and what expenses the plaintiff has (*Epps, supra,* at 968). Factors specifically related to prisoner plaintiffs include: how much money the prisoner has in his inmate account (*Id.* at 967–68) and how many suits the prisoner has pending in federal court, which bears on plaintiff's good faith in filing the suit (*Carter, supra,* at 999; *Collier v. Tatum,* 722 F.2d 653, 657 (11th Cir.1983)).

In *Collier,* plaintiff prisoner had $140 in his inmate account. The court ordered plaintiff to pay a filing fee or explain why he could not. Plaintiff responded that his account had dropped to under $1. At the court's request, plaintiff could offer no explanation for this decrease. Since the court did not know whether plaintiff intentionally decreased the balance in the account to avoid court costs, it held that plaintiff had to pay the fee or face dismissal of the case.

In this case, plaintiff acquired $1000.00 and allegedly gave it to his mother for her support. The court below adopted the view of the *Carter* court and held that plaintiff must pay the full filing fee of $131.40 since he "controlled the disbursement of the funds" and "chose to forego having the money deposited into his inmate account." The Magistrate did not consider the merits of plaintiff's claim that he used the money for a "valid" purpose.

Second, the Magistrate did not consider applying a partial filing fee. While the Ninth Circuit has not considered the issue, "All circuits that have considered the issue, have upheld the authority of district courts to require prisoners to pay partial filing fees." *Epps, supra,* at 967. While no uniform test exists to determine the amount of a partial fee, courts have given judges wide discretion in determining a proper fee.

The *in forma pauperis* statute allows potential plaintiffs unable to afford filing fees and costs, to proceed without paying such fees and costs. However, on its face, the statute does not provide for the payment of partial filing fees. Several federal circuits have accepted partial filing fees to discourage potential prisoner plaintiffs from filing meritless suits just to harass prison officials and the courts. On the other hand, a partial fee allows potential plaintiffs with limited resources to pursue claims they believe meritorious. Judge Posner of the 7th Circuit notes that even a modest fee will weed out claims with no merit, filed by plaintiffs with nothing to lose. In *Lumbert, supra,* Judge Posner considered a prisoner's claim that a partial filing fee based on "50% of the prisoner's average monthly income for the six months immediately preceding the submission of the petition" was erroneous. The 7th Circuit held that this formula was not an abuse of discretion. Judge Posner noted

that imposing some cost on a prospective plaintiff will ensure that the plaintiff believes his claim has some merit and will not file a suit just to harass:

> We want the putative plaintiff to think about the case and not just file reflexively; having to make even a modest monetary outlay may help focus his thinking ... It is proper that prisoners be made to think twice—by monetary exactions well within their ability, limited as it is, to pay—about bringing lawsuits that have no significant prospect of obtaining any worthwhile relief.

*Id.* at 259–60.

The partial fee issue is especially pervasive in the context of potential *prisoner* plaintiffs, who almost always have limited financial resources, but plenty of time to file civil rights suits. While § 1915 does not specifically address partial filing fees, the 1st, 2nd, 3rd, 4th, 5th, 7th, 8th and 11th Circuits have upheld them. *In re Stump,* 449 F.2d 1297 (1st Cir.1971); *In re Epps,* 888 F.2d 964 (2d Cir.1989); *Bullock v. Suomela,* 710 F.2d 102 (3rd Cir.1983); *Evans v. Croom,* 650 F.2d 521 (4th Cir.1981); *Smith v. Martinez,* 706 F.2d 572 (5th Cir. 1983); *Lumbert, supra,* (7th Cir.); *In re Williamson,* 786 F.2d 1336 (8th Cir.1986); *Sellers v. United States,* 881 F.2d 1061 (11th Cir.1989). The 6th, 9th, 10th, D.C. and federal Circuits have not considered the issue. In general, the circuits that have considered the issue have upheld partial filing fees to make potential plaintiffs think twice before filing suits that may have no merit.

The first case to test the legality of partial fees was *Braden v. Estelle,* 428 F.Supp. 595 (S.D.Tex.1977). The court analogized partial filing fees under § 1915 to the Criminal Justice Act, 18 U.S.C. § 3006A, which authorizes imposing partial costs on defendants who want counsel appointed, yet can afford to pay some amount. *Id.* at 599. The court noted that if an "all or nothing" plan was not required for criminal defendants, it should not be required for civil plaintiffs. *Id.* The court stated "[I]f the court may grant a waiver of 100% of the costs ... the court also is vested with the discretion to waive a lesser percentage of such costs." *Id.* at 598–99. All cases after *Braden* have relied on *Braden* in upholding partial filing fee plans. Thus, it appears that partial filing fees for *forma pauperis* plaintiffs are legal.

While all circuits that considered the issue have upheld partial filing fees, they have all imposed strict conditions on their validity. The following list comprises a combination of the conditions that various courts have mandated.

First, all courts allowing partial fees have required the court to publish the fee schedule or formula as a rule. Further, most circuits have strongly suggested that courts attach the schedule or formula to the *in forma pauperis* application so potential plaintiffs will be aware of the possibility of a partial fee. In this case, the court cannot give plaintiff advance notice, but may still calculate a partial fee, if appropriate.

Second, the Federal Judicial Center in its Report, "Partial Payment of Filing Fees in Prisoner IFP Cases in Federal Courts: A Preliminary Report," by T. Willging (1984), indicated that a partial fee should never exceed ⅓ of a prisoner's income or assets.

Next, some circuits have allowed prisoners to pay a partial fee in monthly installments. While the Eighth Circuit allows this, *Williamson, supra,* the Seventh does not. *Caldwell v. United States,* 682 F.2d 142 (7th Cir.1982). Thus, the issue appears unresolved.

Fourth, a court should base the amount of the partial fee on a fixed percentage of the prisoner's assets, including the balance of the inmate account, on the date the suit is filed, or on the prisoner's income over a short period of time. Federal courts supposedly have access to each prisoner's account balance. In ascertaining a prisoner's ability to pay, a court may consider that a prisoner has recently depleted the account, possibly to avoid a fee. However, the court must conduct a factual inquiry into why the account balance has decreased, and must allow the prisoner to respond to the court's findings (e.g., that a miscalculation has occurred).

Fifth, all circuits allowing partial fees have held that the amount of the fee cannot deprive the plaintiff of "enough money for the necessities of life." Courts have been quick to point out, however, that the state provides prisoners most, if not all, of their necessities. If the plaintiff spends money on nonessential items, courts may consider this.

Next, if the plaintiff has no money and the court has determined that he has not recently spent money on "luxury" items, the court must allow the plaintiff to proceed without paying any fees.

Seventh, the amount of the fee cannot be arbitrary. The court must attempt to consistently calculate a partial fee for each plaintiff it encounters.

Finally, a court may look to the plaintiff's litigation history, i.e., how many suits the prisoner has filed. However, a court may not base its decision solely on a plaintiff's litigation history.

Clearly, the most difficult issue courts have faced and this court faces is how to calculate an appropriate fee. No two circuits have used the same "formula." We now detail the various formulas courts have used and examples of fees that have been held either appropriate or too high.

Most circuits have based their partial fees on either the prisoner's income (money deposited into the prisoner's account) over the 3 or 6 months preceding the filing of the complaint; or, on the value of the prisoner's assets at a certain point in time, usually the date the prisoner filed the complaint. One court based the fee on the prisoner's income during the preceding 1 month. Where basing the fee on one of these formulas yielded an amount higher than prisoner's cash balance, courts conducted a factual inquiry to determine whether plaintiff should be allowed to proceed without paying any fees or whether plaintiff should be required to pay the full fee or have the case dismissed (see 4th, 5th and 6th requirements above). One court held that since the prisoner did not currently have the partial fee, the court could take it out of his *next* inmate deposit. *Smith, supra,* at 572.

The percentage a court should use to multiply by income or assets to reach a maximum fee has raised some problems. Courts have ranged anywhere from ten percent to fifty percent. The actual percentages are ten (twice), fifteen, twenty-six, thirty and fifty, yielding an average of 23.5 percent. No court has ruled where the line between an appropriate percentage and an inappropriate percentage lies. However, an amount around 23.5% (definitely less than 29%—see below) is probably appropriate if courts apply the percentage consistently to all prisoners.

Below is a chart indicating fees courts have held appropriate and fees courts have held too high.

1. Appropriate Fees

| Acct. Bal. or Monthly Income | Fee | % of bal. or inc. |
|---|---|---|
| $140.37 | $15 | 10% |
| $ 78 | $15 | 19% |
| $ 27 | $ 8 | 29% |
| $ 47 | $14 | 29% |

2. Inappropriate Fees

| Acct. Bal. or Monthly Income | Fee | % of bal. or inc. |
|---|---|---|
| $ 5 | $20 | N/A |
| $15 | $45 | 33% |
| $30 | $12 | 40% |
| $17 | $ 5 | 29% |
| $ 4.76 | $ 4 | 84% |
| $13 | $20 | N/A |

The Magistrate ordered plaintiff to pay the full $131.40 in filing fees just because plaintiff acquired $1000.00. However, the Magistrate did not consider the validity of plaintiff's claim that he used the money for his dependent mother, nor did it consider the balance of plaintiff's inmate account or plaintiff's income between the date of filing the complaint and the date plaintiff acquired the $1000.00. Further, the Magistrate did not consider imposing a partial filing fee.

IT IS, THEREFORE, HEREBY ORDERED that the case be remanded to the Magistrate, so that the Magistrate may ascertain the location of the $1000.00 and the balance of plaintiff's inmate account, determine whether plaintiff's mother is dependent on plaintiff and whether plaintiff has an obligation to support his mother, and whether plaintiff filed the suit in good faith.

IT IS FURTHER ORDERED that if appropriate, the Magistrate should calculate an appropriate partial filing fee, consistent with this opinion. If a partial fee is inappropriate, the Magistrate should determine whether plaintiff must pay the full fee or no fee at all, consistent with this opinion.