**James F. STEHOUWER, Plaintiff,**

v.

**Michael HENNESSEY, Sheriff,
et al., Defendants.**

**Steve OLIVARES, Plaintiff,**

v.

**Charles D. HARSHALL, Warden,
et al., Defendants.**

Nos. C–92–4602–VRW, C–93–0405–VRW.

United States District Court,
N.D. California.

Jan. 11, 1994.

---

special appearance before the court, solely for the purpose of challenging the partial fee requirement. In plaintiffs' response to the order to show cause, they argued that a partial filing fee is unauthorized and, in any case, is inappropriate in their respective cases. Although defendants had not yet been served, the court invited them to submit memoranda on the issue. Plaintiffs replied, and oral argument was heard by the court. The court then awaited the Ninth Circuit's decision in *Alexander v. Carson Adult High School,* 9 F.3d 1448 (9th Cir.1993).

For the reasons discussed below, plaintiffs are hereby ORDERED to pay partial filing fees as set forth in this order.

Rosen, Bien & Asaro, Sanford Jay Rosen, Michael W. Bien, and Hilary A. Fox, San Francisco, CA, for plaintiffs James F. Stehouwer and Steve Olivares.

Celeste Bell, Deputy City Atty. and Jim Humes, Deputy Atty. Gen., San Francisco, CA, for defendants.

## ORDER REGARDING PAYMENT OF PARTIAL FILING FEE

WALKER, District Judge.

On May 25, 1993, the court issued an order in each of the above-captioned civil rights cases requiring plaintiffs to pay a partial filing fee or, in the alternative, to show cause why partial payment should not be required. On July 16, 1993, plaintiffs' counsel made a

## I

Litigants in the federal courts receive a substantial subsidy from taxpayers. Although data for the entire federal court system are apparently unavailable, figures from the operation of the Northern District of California are nonetheless illustrative of this point. And because the experience of the Northern District is likely to be typical of that of other districts, it appears probable that federal litigation as a whole is primarily funded by tax revenues.

The total operating expenses of this district for the twelve months ended September 30, 1993, were $22.75 million.[1] Assuming that two-thirds of these services were devoted to civil cases,[2] approximately $15.24 million of these expenses can be attributed to the civil docket. During the same fiscal year, the court received and deposited into the Treasury approximately $445,000 in civil filing fees. This revenue, along with other fees authorized a 28 U.S.C. § 1915(b), defrays only about 3% of the expenses associated with civil suits. Given that 5,530 civil suits were filed during the above fiscal year, the expense per civil case amounts to almost $2,800.

---

1. Memorandum dated December 16, 1993 from Jim Gilmore, Chief Deputy Clerk, filed as part of the record herein ("Gilmore Memo").

2. The Federal Judicial Center informed the undersigned that it estimates that over the past four years, federal courts spend two-thirds of judicial effort on civil cases. In this district, due to the fairly large number of complex civil cases filed, the proportion devoted to such cases is almost certainly higher. The estimate of the civil litigation subsidy made here is, therefore, conservative.

In order to receive the judicial services paid for by these expenditures, 28 U.S.C. § 1914 requires most litigants to pay a filing fee of $120, while petitioners for a writ of habeas corpus are assessed a fee of $5. The difference between the cost of the judicial services provided and the fee paid by the litigant represents the litigation subsidy provided by the taxpayers. Because this difference is positive and substantial, it is undeniable that there is a significant taxpayer-funded incentive to litigate in federal court.

Many potential litigants do not possess sufficient liquid funds to pay the $120 filing fee necessary to receive this subsidy.[3] Because of the possibility that some of these potential litigants may have colorable federal claims, Congress has delegated to the district courts the authority to enlarge the already substantial subsidy afforded by § 1914 even further. Specifically, a litigant "who makes affidavit that he is unable to pay such costs or give security therefor" is permitted to proceed without prepaying the filing fee. 28 USC § 1915(a). It is not clear, however, why Congress has conferred upon individual judges the power to augment the § 1914 litigation subsidy in this manner. Nor is it clear why Congress did not specify or limit the amount of taxpayers' money that could be devoted to the § 1915 supplemental subsidy. This is particularly puzzling given that Congress does limit the § 1914 subsidy, by setting the courts' annual appropriations and prohibiting them from collecting additional revenues. 28 U.S.C. § 1914(b). Given that Congress itself appropriates funds for the § 1915 subsidy, Congress has essentially given the federal courts an unlimited budget.

Plainly, there were alternatives which Congress could have adopted. An administrative body or magistrate judges adhering to certain clearly defined standards could just as well decide whether an individual litigant deserves the § 1915 supplemental subsidy. Indeed, a disinterested third party might make a better decision than the very judge who is responsible for handling the case. After all, a judge has somewhat conflicting interests in whether the litigation should proceed: on the one hand, of course, granting a fee waiver means more work for the judge; at the same time, the judge is constrained by his oath to "do equal right to the poor and the rich," 28 U.S.C. § 453, and in any event, the additional cases of the federal courts' dockets creates a public impression of overworked courts, which in turn facilitates the judiciary's attempts to secure greater appropriations, more judgeships, etc., from Congress. It seems likely that Congress—which is hardly oblivious to such collisions of self-interest and responsibility—conceived that individual judges could nonetheless be trusted to make these decisions with reasonable prudence to the taxpayers and fairness to the potential litigants. Judicial self-restraint in granting the prepayment waiver was apparently chosen over any explicit spending limitation.

When only the rare litigant sought to proceed without prepayment of the filing fee, the revenues lost to the Treasury by the over-generous granting of fee waivers, and the added burdens to the courts and defendants were fairly trivial in magnitude. Under those circumstances, the absence of systematic processing of fee waiver applications posed little difficulty. It is not apparent that this continues to be the case. According to information compiled by the clerk of this court, in the twelve months ending September 30, 1993, 1,349 of the 5,530 civil cases (or 24%) filed in this district were accompanied by an application to waive prepayment of fees. Although the records regularly maintained by the judiciary do not reflect how many of these applications were granted, it is plain that this constitutes a high percentage.[4]

By far the largest number of the cases which receive the § 1915 subsidy are those brought by prisoners. In the prior fiscal year, over 21% of the cases commenced in the federal district courts were petitions by prisoners. *Annual Report of the Director, Administrative Office of the United States*

---

3. This does not mean that the filing fee is beyond the means of such litigants as the expected value of their legal claims is part of their wealth.

4. This conclusion is evident from the fact that although the non-habeas civil filing fee is $120, filing fee revenue for the 5,148 non-habeas civil filings is well under $87 per civil case filed. See Gilmore Memo.

*Courts* 179 (1992). Earlier surveys of prisoner § 1983 actions show that nearly all were commenced under § 1915. See, for example, Turner, *When Prisoners Sue: A Study of Prisoner Section 1983 Suits in the Federal Courts*, 92 Harv L Rev 610, 617 (1979) (85 to 95 percent of prisoner § 1983 suits were commenced under § 1915). This, no doubt, is still true. Of course, by no means are prisoners filing petitions in the district courts the only persons seeking to proceed under § 1915. See Note, *Controlling and Deterring Frivolous In Forma Pauperis Litigation*, 55 Fordham L Rev 1165, 1165 n 2 (1987). Various types of civil rights plaintiffs also tend to receive the § 1915 supplemental subsidy in substantial numbers.

These cases in which litigants receive the § 1915 subsidy are not an insignificant burden on the courts. According to a study recently completed by the Federal Judicial Center, 27% of judicial work hours are devoted to civil rights cases, the most common form of action in which a § 1915 prepayment waiver is requested. It follows from these data that a large part of the resources of the federal courts is consumed in handling cases which receive the supplemental litigation subsidy of § 1915.

One may question whether federal courts are best suited for such litigation. Federal courts are generally located farther away from most citizens than are the state courts, therefore requiring litigants to travel further for their day in court. Additionally, litigation in federal court requires the parties to familiarize themselves with federal procedures, which are oftentimes more complex than the state counterparts. Moreover, despite being labelled as actions seeking vindication of federal civil rights, most of these cases involve the most intensely local concerns. For these and other reasons, Congress has recognized that certain types of suits typically accompanied by § 1915 petitions should pass through alternative dispute resolution ("ADR") mechanisms prior to arrival in federal court.[5] Many of these cases, no doubt, are resolved in these ADR proceedings and many more could be resolved by more vigorous use of such proceedings.

Undoubtedly, there are many types of civil cases for which the decision to file suit is largely unaffected by the § 1915 subsidy. Most plaintiffs face significant costs in bringing suit, two of which are attorney fees and the interruption of jobs and other daily responsibilities. Confronted with these expenses, the ordinary plaintiff is unlikely to be motivated to file suit simply by the promise of subsidized court access.

Prisoner litigants, however, present a very different picture. Most prisoner suits are filed pro se; hence, there are no attorneys to pay. Additionally, litigation does not create an interruption in the lives of prisoners, who have great amounts of time to devote to such activities. Under these circumstances, the allure of "free" litigation is great indeed. And because prison life by its very nature engenders frustration and feelings of antipathy towards, and persecution by, prison officials, lawsuits present a ready means for the prisoner to seek retribution against officials, whether justified or not.

Under the current system, there is nothing preceding the filing of suit which serves to filter out the meritorious cases from the non-meritorious ones.[6] Hence, it is not surprising that the vast majority of prisoner cases achieve no relief. In light of the rarity of any relief and its slowness when it is achieved, it seems doubtful that the availability of a litigation remedy plays any part in maintaining peace in the prisons. Prisoner cases do, however, impose large—and apparently uncalculated—costs on both the judiciary and, perhaps more importantly, on state and federal correctional institutions and mechanisms.

---

5. For example, 42 U.S.C. § 1997e provides for exhaustion of prison administrative remedies certified by the Attorney General or the court as prerequisite for prisoners' § 1983 suits; 42 U.S.C. § 2000e–5(f)(1) requires a Title VII litigants to obtain a right-to-sue letter from the Equal Employment Opportunity Commission before coming to federal court.

6. The requirement of exhaustion of administrative remedies allowed under 42 U.S.C. § 1997e does not apply to California prisoners since California's prison administrative grievance system is not certified pursuant to § 1997e.

It is not surprising, therefore, that those courts which have addressed the matter have concluded that the litigation subsidy for cases under § 1915 should not be unbounded; therefore, many courts have felt free to exercise practical restraint in awarding the § 1915 supplemental subsidy, especially in prisoner litigation. Plaintiffs' position here, curiously enough, is that the court should be oblivious to such considerations.

## II

Plaintiffs contend that requiring even partial payment by someone who can afford some part of the § 1914 filing fee is an unconstitutional burden on the right of access to the courts. This contention is misguided. A filing fee clearly does not violate the Constitution; if it did, § 1914 itself would be unconstitutional. *Lumpert v. Illinois Dep't of Corrections,* 827 F.2d 257, 259 (7th Cir.1987). Instead, the proper rule is that reasonable costs may be imposed on persons who want to sue. *Id.* The problem arises in deciding what is reasonable.

The imposition of a partial filing fee when it is economically feasible for a plaintiff to pay it does not have a chilling effect on indigent plaintiffs, nor does it infringe on any right of reasonable access to the courts. Although federal court litigation is substantially encouraged as a matter of federal policy, this is nowhere required by the Constitution. In fact, it would be perfectly consistent with the Constitution to require all civil litigants to pay the full costs of operating the federal courts. Given that the federal courts are, after all, creatures of Congress, litigation in federal court is merely a privilege; it is not a right, much less an absolute one as plaintiffs contend.

On its face, 28 U.S.C. § 1915(a) does not call for the payment of partial filing fees. Every circuit court which has considered the appropriateness of a partial filing fee, howev-

er, has explicitly or implicitly upheld the district courts' discretion to impose partial filing fees on plaintiffs seeking in forma pauperis ("IFP") status. See *Butler v. Leen,* 4 F.3d 772, 773 (9th Cir.1993); *Clark v. Ocean Brand Tuna,* 974 F.2d 48, 50 (6th Cir.1992); *In re Epps,* 888 F.2d 964, 967 (2d Cir.1989); *Bryan v. Johnson,* 821 F.2d 455, 458 (7th Cir.1987); *In re Williamson,* 786 F.2d 1336, 1339–41 (8th Cir.1986); *Collier v. Tatum,* 722 F.2d 653, 655 (11th Cir.1983); *Bullock v. Suomela,* 710 F.2d 102, 103 (3d Cir.1983); *Smith v. Martinez,* 706 F.2d 572, 574 (5th Cir.1983); *Evans v. Croom,* 650 F.2d 521, 522–23 (4th Cir.1981), cert. denied, 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982); *In re Stump,* 449 F.2d 1297, 1298 (1st Cir. 1971). During the time this motion has been under consideration, the Ninth Circuit has had pending a case in which this very issue is raised. In a recently issued decision in that case, the court strongly implied that a partial filing fee is permissible. See *Alexander v. Carson Adult High School,* 9 F.3d 1448 (9th Cir.1993).

The language of § 1915(a) granting the courts discretion to waive costs entirely has been construed as also providing the authority to waive only a portion of those costs. "The discretion to waive prepayment of filing fees * * * need not be exercised on an all-or-nothing basis. The power to waive the entire fee includes the power to waive a portion of it." *In re Epps,* 888 F.2d at 967; see also *In re Williamson,* 786 F.2d at 1338 ("It is logical that if the court may grant a waiver of 100 percent of the costs on * * * items, the court is also vested with the discretion to waive a lesser percentage of such costs.") (quoting *Braden v. Estelle,* 428 F.Supp. 595, 598–99 (S.D.Tex.1977)); T. Willging, *Partial Payment of Filing Fees in Prisoner IFP Cases in Federal Courts: A Preliminary Report* 1 (Federal Judicial Center 1984) (courts have discretion under § 1915(a) to impose partial payment plans).[7]

---

7. Courts have also found support for partial payment systems by reference to the Criminal Justice Act's provision for the appointment of counsel to represent indigent criminal defendants. See 18 U.S.C. § 3006A(a), (b). The Criminal Justice Act permits the court to demand partial payment for legal representation or terminate the

appointment, if it finds that the defendant can afford a portion of the costs. Id. at (c). If Congress did not adopt an "all or nothing" approach in the context of indigent criminal defendants, some courts have reasoned, then that approach is not required for indigent civil plaintiffs

Further support for the court's authority to grant only a partial fee waiver arises from the fact that § 1915 does not confer on indigent plaintiffs a right to waiver of *all* litigation fees and costs. Instead, § 1915(a) allows indigent plaintiffs only to commence a suit without prepayment of *initial* filing and service fees. *Flint v. Haynes,* 651 F.2d 970, 973 (4th Cir.1981), cert. denied, 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 306 (1982). Furthermore, IFP status may be acquired or lost during the course of the litigation, and the court may waive or order payment of costs for any of the benefits that may arise under the statute. See *Evans v. Croom,* 650 F.2d at 525 n. 12; *Carter v. Telectron, Inc.,* 452 F.Supp. 939, 942 (S.D.Tex.1976).

It follows from the above that prepayment of initial filing fees may be waived in part when it is economically feasible for an IFP plaintiff to pay a portion thereof. After all, the determination of economic feasibility or hardship is wholly within the discretion of the court. See *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 337, 69 S.Ct. 85, 290, 93 L.Ed. 43 (1948) (there are "few more appropriate occasions for use of a court's discretion than" where a litigant asks "that the public pay costs of his litigation"); *Johnson v. Kemp,* 781 F.2d 1570, 1571–72 (11th Cir.1986) (district courts have wide discretion in determining whether fee is fair).

But perhaps the most persuasive argument for the imposition of partial fee payment is that to do so encourages IFP plaintiffs to evaluate the worth of their claims. The initial question facing non-indigent plaintiffs is whether their actions are worth the costs of the suit, including the § 1914 fee. On the other hand, " 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.' " *Denton v. Hernandez,* — U.S. —, —, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (quoting *Neitze v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989)). By imposing some affordable fee even on indigent prospective plaintiffs, courts can help to ensure that each plaintiff believes his claim has some either. See *Braden v. Estelle,* 428 F.Supp. at

merit, thereby preventing the filing of suits just for harassment purposes. See *Collier v. Tatum,* 722 F.2d at 655.

The costs of litigation, of course, are not limited to those who initiate it. They are also borne "by the defendant, by the taxpayers, and by parties to other lawsuits in the same court, whose cases may be delayed or who may receive less attention from the judges than if the caseload were lighter." *Lumpert,* 827 F.2d at 259. These social costs are particularly problematic in the case of IFP litigants, because they cannot be deterred from suit; if all costs of litigation are waived, they have nothing to lose and everything to gain. See *Flint v. Haynes,* 651 F.2d at 523. Having to make even a modest monetary outlay should encourage a putative plaintiff "to think about the case and not just file reflexively." *Lumpert,* 827 F.2d at 259.

The court therefore concludes that the imposition of a partial filing fee when it is economically feasible for an IFP plaintiff to pay it is not only sound policy, but is also a fair means of allocating scarce judicial resources so as to reach the maximum number of meritorious suits.

### III

### A

After reviewing Stehouwer's affidavit of poverty in support of his request to proceed IFP, the court determined that a partial filing fee of $20, in two installments of $10 each, was in order. See *Stehouwer v. Hennessey,* C 92–4602 VRW at 2 (N.D.Cal. May 25, 1993) (order requiring payment of partial filing fee). The court based its decision on an approximate monthly prison salary of $14.61, a prison trust fund balance of $14.61, and a statement indicating that for the six months immediately preceding the submission of the complaint, plaintiff received payments into his trust fund account of $110 from his family.

█ Stehouwer contends that since he is no longer in prison (he was paroled on August 8, 1993), he should be permitted to proceed without prepayment of fees like oth-

599.

er indigent litigants. He claims that most courts that have adopted or upheld partial fees have done so in the context of prisoner litigants, presumably as a means of reducing prisoner litigation. While it is true that most of the cases addressing the imposition of partial fees do involve prisoner plaintiffs and that prisoner litigation poses great concerns, see supra at 8–9, the rationale behind partial filing fees is not limited to prisoner litigants. The purpose of partial payment systems is to require IFP plaintiffs, whether or not they are incarcerated, to evaluate the worth of their claims before filing suit. The social cost of the instant case is no less now that Stehouwer is out of prison than it was when he was in. The only significant change, if any, is that it can no longer be said that Stehouwer's necessities of life are being paid for by the state. Compare *In re Epps*, 888 F.2d at 967 (prisoners' necessities of life are paid for by jurisdiction that incarcerates them). Therefore, the proper inquiry is whether it is still economically feasible for Stehouwer to pay a part of the filing fee.

On September 30, 1993, the court issued an order allowing Stehouwer to file an updated affidavit of poverty within fifteen (15) days. Stehouwer failed to respond. Only Stehouwer's original affidavit of poverty is on file for consideration; accordingly, the court's previous assessment of a partial filing fee of $20, in two installments of $10 each, was required to proceed IFP shall stand.

### B

■ The court also determined that a partial filing fee of $30 was a feasible amount for Olivares to pay. See *Olivares v. Marshall*, C 93–0405 VRW at 2 (N.D.Cal. May 25, 1993) (order requiring payment of partial filing fee). The court based its decision on a prison trust fund balance of $76.29, and a statement indicating that for the six months immediately preceding the submission of the complaint, plaintiff received payments into his trust fund account of $310 from his family.

Plaintiff argues that a $30 partial filing fee is excessive because by the time he received the court's order requiring the partial fee, he had only $36 remaining in his account. The

fact that plaintiff's balance has diminished while the IFP determination was pending is not determinative of the proper fee, however, since the lower balance may well be an intentional distortion due to posturing. See *Collier v. Tatum*, 722 F.2d at 655; *In re Stump*, 449 F.2d at 1297. Nor is there reason to believe that the account will not once again be replenished. See *Smith v. Martinez*, 706 F.2d at 574 (court may reasonably anticipate continuing family contributions). But most importantly, the imposition of a $30 partial filing fee does not require a fee greater than plaintiff's assets, see *Alexander*, 9 F.3d at 1449 nor will it deprive plaintiff of the basic necessities of life, see *Adkins*, 335 U.S. at 339, 69 S.Ct. at 89. The state of California, after all, provides plaintiff with his basic necessities. "If the inmate thinks that a more worthy use of his funds" is to buy candy and the like, rather "than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor." *Lumpert*, 827 F.2d at 260.

Both plaintiffs have been given an opportunity to explain why the partial filing fee imposed here should not be required. In that connection, both plaintiffs have been represented by able counsel. No explanation from either plaintiff has been advanced.

### IV

For the foregoing reasons, plaintiffs shall pay the above-mentioned partial filing fees within twenty (20) days from the date of this order. If either plaintiff fails timely to pay his appropriate fee, his action will be dismissed.

SO ORDERED.