MOORE, Chief Justice
(dissenting).
Bruce Lavell Johnson sought a writ of mandamus from the Court of Criminal Appeals to compel the Baldwin Circuit Court, among other things, to grant him informa pauperis status to file a petition for post-conviction relief under Rule 32, Ala. R.Crim. P. The Court of Criminal Appeals denied his petition by an order, stating:
“Currently, the fee for filing a post-conviction petition in the Baldwin Circuit Court is $249.50. Johnson’s inmate account summary that was attached to this mandamus petition shows that for the 12 months preceding the filing of this petition Johnson had $561 deposited into his inmate account. Johnson could have saved the money to pay the filing fee and is not indigent. See Ex parte Wyre, 74 So.3d 479 (Ala.Crim.App.2011).”
In Ex parte Wyre, 74 So.3d 479 (Ala.Crim.App.2011), the Court of Criminal Appeals held that a petitioner who “had over two times the amount necessary to satisfy the filing fee deposited to his account” in the previous 12 months was not indigent because he “could have saved the money to pay the filing fee.” 74 So.3d at 481. Johnson, who falls within this parameter, petitioned this Court for a writ of certiora-ri to review the Court of Criminal Appeals’ denial of his petition. He argues that the Wyre decision violates his right of access to the courts and equal protection of the laws. Because I believe this Court should grant Johnson’s petition and address the 12-month look-back rule of Wyre, I dissent from the order denying certiorari review.
“ ‘Indigent prisoners must be allowed to file appeals and habeas corpus petitions without payment of docket fees.’” Hoppins v. State, 451 So.2d 363, 364 (Ala.Crim.App.1982) (quoting Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). An indigent is “a person who is financially unable to pay for his or her *954 defense.” Rule 6.3(a), Ala. R.Crim. P. “[A] court considering an indigency request may consider the deposits to a petitioner’s inmate account for the 12 months preceding the filing.” Ex parte Wyre, 74 So.3d at 481 (citing Rule 32.6(a), Ala. R.Crim. P.).[1]
Rule 32.6(a), as applied in Wyre, potentially would require a prisoner whose average monthly deposit is $42 to save up to 50% of his monthly account balance for a year (one-half of $500). Johnson averaged only $47 per month in deposits. If he had started saving 12 months before he filed his petition, he would have had to limit himself to $26 per month for commissary expenditures, or $6 per week.
A Rule 32 petition generally has to be filed
“(1) [i]n the case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala. R.App. P.; or (2) in the case of a conviction not appealed to the Court of Criminal Appeals, within one (1) year after the time for filing an appeal lapses.”
Rule 32.2(c), Ala. R.Crim. P. The current look-back rule of Wyre may thus impede access to the courts by requiring a prisoner like Johnson to predict at least a year in advance that he will be filing a Rule 32 petition and also to possess the clairvoyance to predict his future account deposits. For instance, Johnson might have discovered a potentially favorable statute or ruling nine months after the time to file a Rule 32 petition began to run, and only then made the decision to file. Under the 12-month look-back rule, he could have been precluded from filing had he failed to start saving his money well before he learned of the new opportunity for relief.
This case presents significant constitutional issues. “The Fourteenth Amendment weighs the interests of rich and poor criminals in equal scale.” Smith v. Bennett, 365 U.S. 708, 714, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). “To require the prisoner to part with a substantial portion of meager monthly income ... creates a deterrence to litigation incompatible with at least the spirit of the in forma pauperis statute.” In re Epps, 888 F.2d 964, 968 (2d Cir.1989) (reducing levy on prisoner’s account from 30% of average monthly income to 10%). In sharp contrast to Epps, the application of Wyre in this case required Johnson to pay 500% of his average monthly income as a filing fee.
Because Wyre’s disqualification of prisoners for informa pauperis status may be unconstitutional under the Due Process Clause (impeding access to the courts) and also under the Equal Protection Clause (disfavoring poor prisoners), I would grant Johnson’s petition for a writ of certiorari.

. By contrast, the federal in forma pauperis statute requisitions 20% of the inmate’s monthly account balance until the filing fee is paid off. 28 U.S.C. § 1915(b). Under that regimen, Johnson would have paid $9 per month.